CENTRAL HARDWARE COMPANY,
Petitioner,

v.

NATIONAL LABOR RELATIONS BOARD, Respondent,
and
Retail Clerks Union, Local 725 Retail Clerks International Association, AFL-CIO, Intervenor.

No. 20199.

United States Court of Appeals,
Eighth Circuit.

Submitted Sept. 13, 1972.

Decided Oct. 19, 1972.

Norton J. Come, Asst. Gen. Counsel, Washington, D. C., Peter G. Nash, Gen. Counsel, Patrick Hardin, Associate Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, Elliott Moore, Atty., for respondent.

Keith E. Mattern, Ronald L. Aylward, St. Louis, Mo., for petitioner.

Before VAN OOSTERHOUT, Senior Circuit Judge, MEHAFFY, Circuit Judge, and DENNEY,* District Judge.

VAN OOSTERHOUT, Senior Circuit Judge.

This case is again before us by virtue of decision of the Supreme Court in Central Hardware Company v. NLRB, 407 U.S. 539, 92 S.Ct. 2238, 33 L.Ed.2d 122 (1972), and mandate issued thereon vacating our judgment entered April 30, 1971, based on our opinion filed March 24, 1971, reported at 439 F.2d 1321, and remanding the case to us to determine the issue of whether there is substantial evidence in the record as a whole to support a finding of the Trial Examiner, approved by the Board, that "there are no reasonable means available to nonemployee representatives of the Union to reach respondent's employees with its organizing message other than by having those representatives meet them on respondent's parking lots." As stated by the Supreme Court, such issue is not reached by the majority in the prior opinion by this court.

As noted in our prior opinion, Central Hardware had been charged with and found guilty of a number of unfair labor practices by the Board in its order reported at 181 NLRB 491 (1970). Our prior opinion upholds the Board on some of its determinations and grants enforcement and denies enforcement with respect to other charges, all as set out in the opinion. The only issue raised in the Supreme Court and now before us on remand is the propriety of enforcing that part of the Board's order requiring Central Hardware to cease and desist from enforcing its rule prohibiting nonemployee Union organizers from using its parking lots to solicit employees for Union membership.

A panel of this court, with Judge Gibson dissenting, in agreement with the Board held this case is controlled by Amalgamated Food Employees Union Local 590 v. Logan Valley Plaza, 391 U. S. 308, 88 S.Ct. 1601, 20 L.Ed.2d 603 (1968), and not by National Labor Relations Board v. Babcock & Wilcox Co., 351 U.S. 105, 76 S.Ct. 679, 100 L.Ed. 975 (1956), as urged by Central Hardware.

The factual background of this litigation is fully set out in the opinion of the Supreme Court and our prior opinion. The Supreme Court has authoritatively determined that under the facts of this case the controlling principles are those stated in *Babcock* and that for reasons set out in the opinion, the Board and this court erroneously applied the principles set forth in *Logan Valley*. The Supreme Court in its remanding opinion

---

* Sitting by designation.

sets out the *Babcock* principle to be applied as follows:

"The Court in *Babcock* stated the guiding principle for adjusting conflicts between § 7 rights and property rights:

'Organization rights are granted to workers by the same authority, the National Government, that preserves property rights. Accommodation between the two must be obtained with as little destruction of one as is consistent with the maintenance of the other. The employer may not affirmatively interfere with organization; the union may not always insist that the employer aid organization. But when the inaccessibility of employees makes ineffective the reasonable attempts by nonemployees to communicate with them through the usual channels, the right to exclude from property has been required to yield to the extent needed to permit communication of information on the right to organize.'

The principle of *Babcock* is limited to this accommodation between organization rights and property rights. This principle requires a 'yielding' of property rights only in the context of an organization campaign. Moreover, the allowed intrusion on property rights is limited to that necessary to facilitate the exercise of employees' § 7 rights. After the requisite need for access to the employer's property has been shown, the access is limited to (i) union organizers; (ii) prescribed nonworking areas of the employer's premises; and (iii) the duration of organization activity. In short, the principle of accommodation announced in *Babcock* is limited to labor organization campaigns, and the 'yielding' of property rights it may require is both temporary and minimal."

The concluding paragraph of the Supreme Court opinion reads:

"The Trial Examiner concluded that no reasonable means of communication with employees were available to the nonemployee Union organizers other than solicitation in Central's parking lots. The Board adopted this conclusion. Central vigorously contends that this conclusion is not supported by substantial evidence in the record as a whole. The Court of Appeals did not consider this contention, because it viewed *Logan Valley* as controlling rather than *Babcock & Wilcox*. The determination whether on the record as a whole there is substantial evidence to support agency findings is a matter entrusted primarily to the Courts of Appeals. Universal Camera Corp. v. NLRB, 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456 (1951). Since the Court of Appeals has not yet considered this question in light of the principles of NLRB v. Babcock & Wilcox, 351 U.S. 105, 76 S.Ct. 679, 100 L.Ed. 975 (1956), the judgment is vacated, and the case will be remanded to that court for such consideration."

The Trial Examiner made a finding reading:

"I conclude that there are no reasonable means available to nonemployee representatives of the Union to reach respondent's employees with its organizing message other than by having those representatives meet them on respondent's parking lots."

The Examiner in his discussion of the issue before us on remand recites that on complaint of Central's employees, Central adopted and enforced a nonemployee no-solicitation rule on or about July 15, 1968, and that prior to July 22, 1968, the Union had compiled a list of the names and addresses of approximately 80% of Central employees at the stores here involved in the Union organization campaign, and that it would have been impossible to compile such list without the parking lot solicitations. Such information was obtained before the adoption and enforcement of the challenged no-solicitation rule. The materiality of this evidence is that the Un-

ion had in its possession the names and addresses of 80% of the employees.

The Examiner in making his finding relied largely on the testimony of Union organizer Mercer, which was based largely on his general experience in organizing unions. Mercer testified that methods of union organizing included passing out literature, handing out information circulars, talking to employees in parking lots, holding an organizational meeting and making telephone calls and home visits. Of these, he testified that the most effective means are home visits. The only testimony with respect to home visits is brought out in Central's cross-examination of Union organizer Kapetanakis who testified he made fifty or sixty home calls on employees and found seven to ten at home, and that the average distance of the employees' homes from the plant was about five miles. Kapetanakis was able to locate the homes of the employees but found many away from home at the time of his visit. No prior appointment had been made. With respect to home calls, the Examiner states:

"The principal problem which this entailed, aside from the substantial difficulty of finding the homes of employees who lived in rural areas surrounding Indianapolis, was that the employees were absent from their homes more often than not when the Union's representative called. In this regard, Mercer, the Union's director of organization, testified that a union representative making a 'home call . . . may have to go back on an average of five or six times in order to actually make contact with the person' sought.

"Mercer's testimony was based on his general organizing experience. It does not appear from the evidence that he visited the home of any employee of respondent. However, Mark Kapetanakis, one of the Union's organizers, did. The results which he obtained supported Mercer's conclusion. Of 50 to 60 employees at whose homes Kapetanakis called, he succeeded in talking to from 7 to 10; the rest were out when visited by him."

It is neither surprising nor unusual for an employee to be away from home at the time an unexpected visit is made without prior appointment. The fact that a considerable number of employees were not found at home on the single occasion when Kapetanakis made his unscheduled visits falls far short of establishing that home calls are not a reasonable means of communication. Moreover, the conclusion that home calls are impractical in this case is inconsistent with Mercer's testimony that home calls are the most effective means of communication with employees. Repeat visits could doubtless be minimized or avoided by making prior appointments by telephone or letter. Messages and union literature could be left at homes where the employee is absent.

The record reflects that of the approximately 250 employees, 57% lived within five miles of the store, 74% lived within ten miles and 88% lived within fifteen miles. Thus travel distance for making home calls would not appear to be excessive.

There is no evidence that any efforts were made to reach the employees by letter, newspaper or radio advertising or by invitations to union meetings. Mercer conceded that there were only two newspapers of general circulation in the Indianapolis area and that people generally read such newspapers. The fact that there were some forty neighborhood newspapers in the area would appear to be of little significance.

Mercer testified that no request was made of the company for a list of employees as things were going so nicely on the parking lot. Doubtless solicitation on the parking lot was an easier approach to the employees than some of the other recognized means of union solicitation. However, this falls far short of meeting the Union's burden of establishing that no reasonable means of com-

munication with the employees existed other than solicitation on the parking lot.

The validity of the Examiner's findings is somewhat weakened by his statement in footnote 30 that he would have reached the result that the nonemployees no-solicitation rule was invalid even if he had found for Central on the other reasonable means of contact issue.

Much of the Examiner's reasoning is based on Indianapolis being a metropolitan area. The Board in Monogram Models, Inc., 192 NLRB No. 99 (1971) states:

"We do not believe it wise or proper to adopt a 'big city rule' and a different 'smalltown rule' in applying Babcock and Wilcox, or to attempt to determine how big a city must be to justify the proposed differing application. Concededly, it may be more convenient and less expensive for the Union to use the Respondent's property for the purpose of organizing the employees here involved. That was also true under the facts of Babcock and Wilcox. But the test established there was *not* one of relative *convenience*, but rather whether the 'location of a plant and the living quarters of the employees place the employees beyond the reach of reasonable union efforts to communicate with them. . . .'
The facts here do not, in our view, justify such a conclusion, and we are unwilling to make that conclusion solely upon the basis of the plant's location in a metropolitan area." (Emphasis added.)

See The Falk Corporation, 192 NLRB No. 100 (1971).

Judge Gibson, in his dissent on the prior appeal, with respect to the issue now before us states:

"With respect to the first aspect of the *Babcock* test, there is no substantial evidence in the record showing that the employees were inaccessible or that reasonable attempts to communicate with them were ineffective. The Union had a list of employees 80 per cent complete and had for a period of time an inside organizer; and it otherwise had unrestricted access to contact the employees at their residences. The Union could invite the employees to any union or organizational meeting and had open many of the conventional means of communication, mail, telephone, personal contacts, etc. The burden was not on the Company to show that conventional means of communication and access were open, but the contrary burden rests with the General Counsel. . . ." 439 F.2d 1321, 1330.

We agree with such statement.

We hold that the Board's finding that no reasonable means of communication with Central's employees were available to the Union organizers other than solicitation on Central's parking lots is not supported by substantial evidence in the record as a whole when tested by the standards set forth in Universal Camera Corp. v. NLRB, 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456 (1951).

We also find that there is no evidence that Central permitted or sanctioned any nonemployee solicitation on its premises. Accordingly, the Board's order invalidating the nonemployee no-solicitation rule is set aside and the Board's cross-application for enforcement of its order with respect to such rule is denied.

Since the Supreme Court opinion and mandate can be construed as vacating the entire judgment entered on the prior appeal, and since we are of the view that the only issue contested before the Supreme Court and involved in its decision is the nonemployee no-solicitation rule, we reaffirm and reinstate our judgment with respect to all issues other than the nonemployee no-solicitation rule for the reasons stated in our prior opinion.