557 F.2d 995
 95 L.R.R.M. (BNA) 2996, 82 Lab.Cas. P 10,022
 INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS, AFL-CIO,
and Local Unions Nos. 1212, 4, 45, 202, 1200,
1220, and 1228, International
Brotherhood of Electrical
Workers, AFL-CIO, Petitioners,
v.
NATIONAL LABOR RELATIONS BOARD, Respondent,
and
CBS, Inc., Intervenor.
 No. 1089, Docket 76-4227.
 United States Court of Appeals,
Second Circuit.
 Argued May 27, 1977.
Decided July 11, 1977.
 
 Laurence J. Cohen, Richard M. Resnick, Robert D. Kurnick, Sherman, Dunn, Cohen & Leifer, Washington, D. C., David I. Ashe, Ashe & Rifkin, New York City, for petitioners International Broth. of Elec. Workers, AFL-CIO, et al.
 Paul J. Spielberg, Deputy Asst. Gen. Counsel, and David F. Zorensky, Atty., N. L. R. B., Washington, D. C., for respondent.
 
 
 1
 Charles G. Bakaly, Robert A. Siegel, O'Melveny & Myers, Los Angeles, Cal., and Stephen M. Koppekin, New York City, of counsel, for intervenor, CBS, Inc.
 
 
 2
 Before VAN GRAAFEILAND, Circuit Judge, and MEHRTENS* and PIERCE,** District Judges.
 
 PIERCE, District Judge:
 
 3
 The International Brotherhood of Electrical Workers, AFL-CIO, and seven of its Local Unions ("IBEW") seek review of an order of the National Labor Relations Board ("NLRB") dismissing a complaint filed against Intervenor CBS, Inc., by the NLRB's General Counsel upon a refusal-to-bargain charge brought by the Unions. The NLRB has cross-petitioned for enforcement. The question is whether, in the circumstances presented, the NLRB correctly determined that the presence on IBEW's bargaining panel of an official of another labor organization, which represented no employee of CBS, but which did represent employees of ABC and NBC, constituted a "clear and present danger" to the bargaining process wherein CBS had intended to reveal to IBEW confidential trade secrets relating to its proposals. We hold that there is substantial evidence to support the findings of the NLRB, and that CBS' refusal to bargain did not violate Sections 8(a)(5) and (1) of the National Labor Relations Act, 29 U.S.C. §§ 151, et seq.
 
 I.
 
 4
 CBS and IBEW have been parties to collective bargaining agreements since 1938. While it is the 1975 bargaining sessions which are at issue here, the NLRB found that the 1972 negotiations were of some relevance to the present controversy. During that year CBS began revealing to IBEW in confidence certain strategic corporate plans concerning technological innovations, particularly in the area of television news coverage. It was anticipated that these plans would allow CBS to cover news more promptly than it had in the past, and, it was hoped, would afford CBS a competitive advantage over its rivals in the broadcast news industry, ABC and NBC. CBS revealed these plans to IBEW in justification of its proposals for more flexible work schedules and other modifications in the contract which would allow CBS to take advantage of its new systems.
 
 
 5
 The Board found that as a result of the 1972 negotiations, IBEW did make certain concessions to enable CBS to implement the new plans; the Board further found that these plans did in fact allow CBS to gain a competitive advantage over its competitors. For example, the Board found, CBS gained one year of "lead time" over NBC and ABC in the use of a cableless microwave television camera, a highly useful instrument in the live broadcast of breaking news events.
 
 
 6
 In the 1975 negotiations, CBS intended to disclose to IBEW still additional technological innovations in support of its bargaining proposals. The Board found that CBS planned to reveal to IBEW plans for certain electronic input devices which could be operated by non-technician artists, and that CBS intended to seek exceptions to IBEW's jurisdiction over such electronic work. CBS also planned to reveal to IBEW a second generation electronic news camera, the "Microcam", apparently a significant advance over the cableless microwave camera. CBS intended to disclose to IBEW the details of the Microcam in support of its proposals that it be permitted to hire free-lance technicians under certain circumstances, and that it be afforded greater flexibility in establishing work schedules.
 
 
 7
 There is no dispute that this information was confidential and that the plans in question would have given CBS a further competitive advantage. At the hearing before Administrative Law Judge Martin Bennett, IBEW stipulated
 
 
 8
 "that during the course of the negotiations the Company intended to present information as to new equipment, and processes that come within the category of trade secrets and confidential business plans which would give the Company a competitive advantage over other broadcasters." (App. 255.)
 
 
 9
 The 1975 negotiations began on July 14, 1975, and bargaining initially proceeded without incident. However, no confidential information was disclosed during the first two sessions, and only IBEW's members were present on the Union panel. Upon resumption of negotiations in September, 1975, IBEW introduced as members of its panel two representatives of the International Alliance of Theatrical and Stage Employees ("IATSE"). This was the first time in thirty-five years that IBEW had designated representatives of other unions as members of its bargaining panel. CBS lodged an objection to IATSE's presence, but it consented to continue negotiations, particularly since CBS did have contractual relations with IATSE.
 
 
 10
 Four days later, IBEW introduced as a member of its panel a representative of the National Association of Broadcast Engineers and Technicians, AFL-CIO ("NABET"). At that time NABET had no collective bargaining agreements with CBS and it represented no CBS employees. However, NABET did represent employees of CBS' arch-rivals, ABC and NBC. Asserting that it could not disclose its confidential business plans under such conditions, CBS objected to NABET's presence and refused to bargain.
 
 
 11
 The parties then attempted to resolve the matter without recourse to the NLRB. The Union proposed that they bargain only concerning non-confidential matters, but CBS rejected this, and the Board in its decision below upheld that refusal on the ground that meaningful bargaining necessarily involves give and take on all issues between the parties. CBS invited IBEW to draw up some form of specific confidentiality pledge which would insure that NABET would not leak confidential information to CBS' competitors. IBEW did not develop such a proposal.
 
 
 12
 During September 1975, the Union and CBS did discuss confidential matters outside the presence of the NABET representative. However, IBEW continued to insist upon NABET's presence during all negotiations regarding modifications in the 1972 agreement. On September 30, 1975, the parties agreed to an extension of the 1972 bargaining agreement until February 29, 1976. When negotiations resumed in January 1976, no NABET representative was present. As found by the Board, the parties did discuss confidential business matters; thereafter a new agreement was completed.
 
 II.
 
 13
 The matter came before the NLRB on IBEW's charge that CBS had unlawfully refused to bargain in violation of Sections 8(a)(5) and (1) of the National Labor Relations Act. NLRB's General Counsel issued a complaint against CBS and the matter was heard before Administrative Law Judge Bennett. In his decision dated June 23, 1976, Judge Bennett found the facts as set forth above. He also found that between 1972 and 1975, IBEW had never disclosed to anyone the confidential information revealed during the 1972 negotiations. Judge Bennett found that in 1975 the presence of the NABET representative on IBEW's panel constituted a "clear and present danger" to the collective bargaining process, and justified CBS' refusal to bargain under the exceptions to the rule set forth in General Electric Co. v. National Labor Relations Board, 412 F.2d 512 (2d Cir. 1969). In his decision, Judge Bennett opined that the NABET representative would have a "duty" to disclose the confidential information to NABET employees, and perhaps even to ABC and NBC in the course of NABET's bargaining with those employers. Finding no violation of Sections 8(a)(5) and (1), the administrative law judge ruled that the complaint against CBS should be dismissed in its entirety.
 
 
 14
 The Union and the NLRB General Counsel appealed this ruling to the Board itself. In a decision dated October 19, 1976, the three-member panel unanimously affirmed the decision below. However, the Board expressly declined to adopt any implication in the judge's opinion that IBEW's actions were borne of bad faith. The Board also refused to agree with the judge's observation that NABET would have had a duty to disclose the confidential information. The Board's decision and order dismissing the complaint is reported at 226 N.L.R.B. No. 85.
 
 III.
 
 15
 Section 10(e) of the National Labor Relations Act, 29 U.S.C. § 160(e), provides that "the findings of the Board with respect to questions of fact if supported by substantial evidence on the record considered as a whole shall be conclusive." Id.; see National Labor Relations Board v. Brown, 380 U.S. 278, 291, 85 S.Ct. 980, 13 L.Ed.2d 839 (1965); Universal Camera Corp. v. National Labor Relations Board, 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456 (1951) (Frankfurter, J.). Thus, to the extent that this appeal turns on issues of fact, the court must accept the Board's conclusions unless they are not supported by substantial evidence.
 
 
 16
 Petitioner IBEW does not take issue with any of the facts as found by the Board; rather, IBEW posits the question on appeal as one of law, i. e., whether or not the facts as found by the Board constitute a "clear and present danger" to the bargaining process. In our view, IBEW takes too narrow a view of the Board's function. While this court may disagree with the NLRB with respect to matters of law, particularly where the agency decision is not consonant with a statutory mandate, here the issue involves the conflicting interests of labor and management, and as such "the Board's determination is to be subjected to 'limited judicial review' ", Brown, supra, 380 U.S. at 290, 85 S.Ct. at 987. Indeed, the Board is in a far better position than is this court to determine whether certain actions do or do not actually pose a danger to the collective bargaining process. See National Labor Relations Board v. J. Weingarten, Inc., 420 U.S. 251, 266-67, 95 S.Ct. 959, 43 L.Ed.2d 171 (1975); General Electric, supra, 412 F.2d at 520.
 
 
 17
 Although there exists ample evidence to support the factual findings below, the Board's decision nevertheless does present the question of whether the circumstances herein constitute a valid exception to the general rule that each party to the collective bargaining process has broad discretion to select its own bargaining representative. Thus, the outcome here depends upon an interpretation of this court's decision in General Electric Co. v. National Labor Relations Board, 412 F.2d 512 (2d Cir. 1969).
 
 
 18
 In General Electric, the court granted enforcement to the NLRB's finding that the Company had committed an unfair labor practice by refusing to bargain with one of its eight unions where the Union included on its panel representatives of each of the Company's seven other unions. The court ruled that management's refusal to bargain could be justified only where there were presented extreme circumstances justifying an exception to the general statutory right of the union to select its own representatives. See 29 U.S.C. § 157. Judge Feinberg, writing for the court, set forth the exception as follows:
 
 
 19
 "There have been exceptions to the general rule that either side can choose its bargaining representatives freely, but they have been rare and confined to situations so infected with ill-will, usually personal, or conflict of interest as to make good-faith bargaining impractical. Thus, the freedom to select representatives is not absolute, but that does not detract from its significance. Rather the narrowness and infrequency of approved exceptions to the general rule emphasizes its importance. Thus, in arguing that employees may not select members of other unions as 'representatives of their own choosing' on a negotiating committee, the Company clearly undertakes a considerable burden, characterized in an analogous situation in NLRB v. David Buttrick Co., 399 F.2d 505, 507 (1st Cir. 1968), as the showing of a 'clear and present' danger to the collective bargaining process." (412 F.2d at 517 (citations omitted) ).
 
 
 20
 An examination of the cases cited by this court in General Electric serves to illustrate the parameters of this rule. In National Labor Relations Board v. International Ladies' Garment Workers' Union, 274 F.2d 376, 379 (3d Cir. 1960), the court upheld the union's refusal to bargain where management had placed an ex-union official on its panel for the express purpose of "putting one over" on the union. See 274 F.2d at 379. In a case analogous to the instant appeal, the Board upheld management's refusal to bargain with a panel which included a union that owned a business in direct competition with the company. See Bausch & Lomb Optical Co. v. National Labor Relations Board, 108 N.L.R.B. 1555 (1954). In some cases a claim of extreme personal animosity will justify a refusal to bargain. See National Labor Relations Board v. Kentucky Utilities Co., 182 F.2d 810 (6th Cir. 1950). But see National Labor Relations Board v. Signal Manufacturing Co., 351 F.2d 471 (1st Cir. 1965) (per curiam ).
 
 
 21
 In General Electric, supra, the court rejected the view advanced by the Company, to wit, that the mere presence of an "outsider" constituted sufficient disruption of the bargaining process to justify management's refusal to bargain. Rather, the court found the Company's conduct unlawful, particularly in light of the past history of negotiations, wherein General Electric had successfully pursued a "divide and conquer" approach to its various unions. 412 F.2d at 518-19. A similar result was reached in Minnesota Mining and Manufacturing Co. v. National Labor Relations Board, 415 F.2d 174 (8th Cir. 1969), where the court of appeals agreed with the Board's conclusion that the Company was not justified in refusing to bargain with one plant's employees where the union panel included a member of a different union which represented employees at another of the employer's plants. Thus, these cases indicate that an employer usually cannot refuse to bargain with one of its unions simply because the panel also includes a representative of another union with which the employer has contractual relations. Other decisions of the NLRB appear to indicate that an employer cannot refuse to bargain with a panel including a labor organization which may have contractual relations with the employer's competitors, at least where the employer itself also has contractual relations with the visiting union. See AMF, Inc., 219 N.L.R.B. 903 (1975); Harley-Davidson Motor Co., 214 N.L.R.B. 433 (1974); Roscoe Skipper, Inc., 106 N.L.R.B. 1238 (1953), enforced, 213 F.2d 793 (5th Cir. 1954).
 
 
 22
 In a case somewhat similar to the one at bar, the Board found unlawful an employer's refusal to bargain with a panel that included a labor organization which had no contract with the employer but which did have contracts with the employer's competitors. In Independent Drugstore Owners of Santa Clara County, 170 N.L.R.B. 1699 (1968), the administrative law judge observed that it is not unusual for a union to negotiate with competing employers, and on the facts of the case before him, the judge was "unable to perceive any reason why (the outsider) might find it to his advantage to reveal . . . information, (concerning the employer's business) to competitors, even if such information could be of interest to such competitors." 170 N.L.R.B. at 1702. Accordingly, Independent Drugstore Owners illustrates that an unsupported claim that business information will be disclosed to competitors will not justify a refusal to bargain with an outsider who represents only employees of a competitor.
 
 
 23
 The court finds the instant case distinguishable from Independent Drugstore Owners. In that case, the employer was concerned only with the possible disclosure of his business volume, costs, profits, and losses. There was no claim regarding possible disclosure of trade secrets or of technological innovations which clearly would be of advantage to competitors. Indeed, in Independent Drugstore Owners, the judge could not even conclude that the data would be of interest to competitors. Further, in that case the Board found that there was no real danger in such disclosure.
 
 
 24
 Here the record amply supports the conclusion that disclosure of trade secrets and confidential business matters would have worked a competitive disadvantage to CBS. In 1972, CBS disclosed similar matters to IBEW in confidence, and accordingly was able to gain a lead over ABC and NBC in the introduction of the cableless microwave camera. The Board has expressly found that the Microcam would give CBS a similar advantage. Under these unique circumstances, the court must conclude that there is substantial evidence to support the Board's conclusion that NABET's presence on the bargaining panel constituted a "clear and present danger" to the bargaining process.
 
 
 25
 While the NLRB did not adopt the judge's conclusion that the NABET representative would have had a duty to disclose the details of the Microcam to ABC or to NBC, the Board did adopt the finding that the possibility of such disclosure was sufficiently disruptive of the bargaining process to justify CBS' refusal to negotiate in NABET's presence. As the Board stated in Bausch & Lomb Optical Co., supra,
 
 
 26
 "We do not mean to imply that given the opportunity the Union would inevitably take advantage of its position in the manner heretofore indicated. It is enough that it could and that the temptation is too great." (108 N.L.R.B. at 1562)
 
 
 27
 The court takes note that the facts in this action concerning CBS' business plans are undisputed. Also, there is substantial evidence concerning the highly competitive nature of the business plans involved. The Union has conceded that these plans would give CBS a further competitive advantage. Upon this record the Board has concluded that a clear and present danger to bargaining exists where the Union panel includes an outsider such as NABET, which owes no allegiance to CBS employees and has no interest in CBS' business prospects, but which does owe an allegiance to the employees of CBS' competitors.
 
 
 28
 We conclude that this is the type of unique situation which constitutes a valid exception to the rule of General Electric. Under the substantial evidence rule of Universal Camera, the Board's decision must be affirmed. The petition for review is denied and the NLRB's cross-application for enforcement is granted.
 
 
 
 *
 Of the Southern District of Florida, sitting by designation
 
 
 **
 Of the Southern District of New York, sitting by designation