**HERCULES, INCORPORATED, Petitioner, Cross–Respondent,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent, Cross–Petitioner,**

**International Chemical Workers Union Local 271, AFL–CIO, Intervenor.**

**Nos. 63, 143, Dockets 87–4029, 87–4051.**

United States Court of Appeals, Second Circuit.

Argued Sept. 14, 1987.

Decided Nov. 13, 1987.

Francis X. Dee, Newark, N.J. (Laurence Reich, Jane Andrews Lalli, Carpenter, Bennett & Morrissey, Newark, N.J., of counsel), for petitioner, cross-respondent Hercules Inc.

Frances O'Connell Taylor, Attorney, N.L.R.B., Washington, D.C. (William R. Stewart, Deputy Asst. General Counsel, Rosemary M. Collyer, General Counsel, John E. Higgins, Jr., Deputy General Counsel, Robert E. Allen, Associate General Counsel, Elliott Moore, Deputy Associate General Counsel, N.L.R.B., Washington, D.C., of counsel), for respondent, cross-petitioner N.L.R.B.

Salvatore J. Falletta, Akron, Ohio, for Intervenor Intern. Chemical Workers Union, Local 271.

Before CARDAMONE, WINTER, and MINER, Circuit Judges.

CARDAMONE, Circuit Judge:

The issue on this appeal is a union's right of access to a company plant versus the company's property rights in its manufacturing processes. As a result of an explosion causing one death and several injuries, the union sought access to the company worksite in order for its expert to conduct an investigation. The employer refused, claiming property rights in its secret processes which give it a competitive edge in the industry. Resolution of a legitimate claim of a property right as opposed to an equally legitimate right in a condition of employment depends not so much on deciding which right controls as it does upon a careful adjustment of these conflicting claims.

Petitioner Hercules, Inc. (Hercules or the Company) petitions for review of a National Labor Relations Board (NLRB) decision and order, dated September 30, 1986, requiring Hercules to grant access to its plant to a non-employee industrial hygienist, and an order, dated March 16, 1987, denying Hercules' motions for reconsideration, consolidation, or reopening and supplementing the record. Respondent NLRB cross-petitions for enforcement of its September 30th order.

I

Hercules, a Delaware corporation, is a manufacturer of chemicals and explosives. Its Parlin, New Jersey plant produces nitrocellulose employing a process unknown to competitors and of great proprietary value. On February 21, 1985 an explosion occurred in the nitrocellulose production area of that plant killing one worker and injuring four others. The International Chemical Workers Union (the International) and its Local 271 (the Local or the Union) requested that an industrial hygienist employed by the International be given access to the worksite in order to investigate the accident. The Company denied this request. On April 24, 1985 the Local asked to inspect the site of the accident and to conduct a comprehensive health and safety inspection and again was denied access. The Union then filed an unfair labor practice charge alleging Hercules' refusal to bargain (Hercules I). The Board issued its order of September 30, 1986, 281 N.L.R.B. No. 130, adopting the recommended order of the administrative law judge, who found that the Company had violated §§ 8(a)(1) and (5) of the National Labor Relations Act by refusing to grant access to the Union's hygienist to investigate the accident, to conduct health and safety inspections, and to test for the presence of toxic or hazardous fumes. The order required Hercules to grant such access for reasonable periods and at reasonable times conditioned upon the Union's execution of a trade secret agreement. The NLRB petitions for enforcement of this order.

On February 11, 1986 another explosion occurred in a different area of Hercules' plant, also dedicated to nitrocellulose production. The Union again apparently requested access. Despite protracted negotiations, this request was not granted. The Union filed a second unfair labor practice charge against Hercules (Hercules II). After a hearing on June 19 and 20, 1986 the administrative law judge recommended that the complaint be dismissed. The Board adopted the recommendation and dismissed the complaint on April 23, 1987. On October 17, 1986 the Company moved for consolidation of Hercules I and II and for reconsideration of Hercules I or, alternatively, that the Board reopen the record of Hercules I and supplement it with that of Hercules II. The Board denied this motion. Hercules petitions for review of the denial, as well as of the September 30th order.

## II

■ The Company challenges the Board's finding that it violated §§ 8(a)(5) and (1) of the National Labor Relations Act by refusing to grant the Union's request for access. To be enforceable, the order must be supported by substantial evidence on the record considered as a whole. 29 U.S.C. § 160(e) (1982); *see Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488, 71 S.Ct. 456, 464, 95 L.Ed. 456 (1951). Sections 8(a)(5) and (d) of the Act make it an unfair labor practice for an employer "to refuse to bargain collectively" in good faith over terms and conditions of employment. 29 U.S.C. § 158(a)(5), (d) (1982). This duty encompasses an obligation "to provide relevant information to union representatives so that they can effectively bargain on behalf of their members." *Fafnir Bearing Co. v. NLRB*, 362 F.2d 716, 721 (2d Cir. 1966). When the union requests not only information but also access to the employer's property in order to obtain health and safety information, the Board balances the employee's right to information against the employer's property rights. *Holyoke Water Power Co.*, 273 N.L.R.B. 1369, *enf'd sub nom. NLRB v. Holyoke Water Power Co.*, 778 F.2d 49 (1st Cir.1985), *cert. de-*

*nied*, — U.S. ——, 106 S.Ct. 3274, 91 L.Ed.2d 565 (1986). An employer's property rights must yield when "responsible representation of employees can be achieved only by the union's having access to the employer's premises." 273 N.L.R.B. at 1370.

The Intervenor Union asks us to enforce the order under the more liberal test of *Winona Industries*, 257 N.L.R.B. 695 (1981). Because the Union's right to access is based on the employer's duty to bargain in good faith on conditions of employment—of which matters of employees' safety and health are of paramount concern—the Board under *Winona* treated the type of request made here simply as a request for information, that is, if the information sought by access was relevant to the union's performance of its duties to its members, the union was generally entitled to access. We note that even under this analysis the Supreme Court has rejected the notion that a union's legitimate interest in the information it seeks will necessarily predominate over all interests an employer might have. *See Detroit Edison Co. v. NLRB*, 440 U.S. 301, 317–18, 99 S.Ct. 1123, 1132, 59 L.Ed.2d 333 (1979) (union access to see employee's confidential test scores outweighed by employer's business need that test be kept secret).

In *Holyoke*, the Board amended the *Winona* test and adopted in its place the current balancing test, which was originally formulated in *NLRB v. Babcock & Wilcox Co.*, 351 U.S. 105, 76 S.Ct. 679, 100 L.Ed. 975 (1956). When union *organizational* rights were at issue, *Babcock & Wilcox* employed a balancing test to resolve union access to company property. But the unanswered question is whether—when union *representational* rights are at issue—the *Babcock & Wilcox* rationale applies in the § 8(a)(5) context. The fact that a bargaining relationship already exists makes union access considerably less intrusive on an employer's property rights, and thus arguably justifies the application of the more lenient *Winona* standard in determining whether to grant access. Several courts faced with this argument have de-

clined to determine which test should be used in cases of union requests for access in the § 8(a)(5) context, concluding on the facts before them that the result would be the same regardless of whether *Holyoke* or *Winona* were applied. *See, e.g., ASARCO, Inc. v. NLRB*, 805 F.2d 194, 197–98 (6th Cir.1986); *NLRB v. Holyoke Water Power Co.*, 778 F.2d 49, 53 (1st Cir.1985), *cert. denied*, —— U.S. ——, 106 S.Ct. 3274, 91 L.Ed.2d 565 (1986).

■ But the circumstances here are not cast in the typical § 8(a)(5) context where access might be inherently less disruptive to the employer's property rights than in the organizational context because the union and the employer have an established bargaining relationship. Unlike the cases above, the Company in the instant case raises a property interest encompassing *more* than just the bare right to exclude people from its premises. Rather, the Union's request for access threatens Hercules' significant property interest in its secret manufacturing processes and—because of the Company's heightened property interest—it is therefore appropriate to employ the *Babcock & Wilcox* balancing test. *See, e.g., Holyoke*, 778 F.2d at 52.

■ Hercules makes several arguments which it claims tip the scales in its favor; we reject each contention. First, it points to its proprietary interest in highly confidential nitrocellulose production techniques. The process gives the Company an edge over its competitors, and to protect that interest Hercules requires employees and contractors working in that production area to sign trade secret agreements. The Board's order similarly was conditioned on the Union's signing a trade secret agreement. We believe this condition adequately protects the Company's proprietary interest.

Second, the Company argues that there were effective alternatives to direct physical access. The industrial hygienist testified that access was necessary to determine whether samples were taken at times and places of likely exposure. We agree. Requiring total reliance on Company data would in effect place the Union at the mercy of the Company. *Cf. Fafnir*, 362 F.2d at 721 (preventing union from conducting studies would in essence require it to play "blind man's bluff"). Such total reliance would be even more disagreeable in the present circumstances, where the explosions raised safety questions implicating not only the employees' health, but their lives as well.

Third, Hercules questions the qualifications and competence of the Union's industrial hygienist. Although the hygienist admitted that he had little experience investigating explosions or testing and analyzing the chemical compounds involved in Hercules' operation, his testimony concerning how he would conduct an investigation leads to a reasonable inference that he was capable of investigating the matter.

Fourth, the Company points to the disruption in its operations that access would cause. Again, the Board's order allays this concern. The limitation that access be allowed only for reasonable periods and at reasonable times permits Hercules to negotiate in order to ameliorate any inconvenience it might experience.

Finally, the Company points to the International Union's involvement in requesting access as a justification for refusing access. To support this point it cites *IBEW v. NLRB*, 557 F.2d 995 (2d Cir.1977), where we upheld an employer's refusal to bargain because the bargaining panel included a union official who represented the employer's competitor's employees and bargaining necessarily would have revealed confidential business matters. *Id.* at 1000. *IBEW* is distinguishable in two respects. First, the unions in *IBEW* represented *solely* the employer's competitors while the International in the present case has been frequently involved in the bargaining relationship between Hercules and its employees. This lessens the possibility that the Union might be inclined to reveal trade secrets to Hercules' competitors. Second, and more important, in *IBEW* the unions refused the employer's invitation to execute a trade secret agreement. *Id.* at 997.

Reviewing the Board's application of the balancing test, we conclude that its deci-

sion that Hercules committed an unfair labor practice in refusing to grant the Union access under these circumstances is supported by substantial evidence in the record. Evidence of the Board's careful balancing of the Union's right to access with the Company's property rights is revealed in the provision that requires the Union to execute a trade secret agreement with Hercules as a condition to obtaining access to the worksite. Such provision is an appropriate adjustment of the Company's and the Union's conflicting claims because it accommodates the Union's right of access with as little destruction as possible of the Company's property rights. *See Hudgens v. NLRB*, 424 U.S. 507, 521–22, 96 S.Ct. 1029, 1037, 47 L.Ed.2d 196 (1976).

### III

■ The Company further argues that the Board abused its discretion when it denied the motion to consolidate Hercules I and II, primarily because there was sufficient congruity of fact so as to mandate consolidation. Although the same Employer, Union, and type of unfair labor practice were involved in both cases, the charges arose out of different explosions and different requests by the Union. The administrative law judge's dismissal of the complaint in Hercules II sufficiently suggests that there were factual differences between the two cases and that the Board's denial was therefore not an abuse of discretion.

The Company also contends that the Board abused its discretion in failing to reopen the record of Hercules I and to supplement it with the record and decision in Hercules II. Only "extraordinary circumstances" normally justify reconsideration or reopening of the record. 29 C.F.R. § 102.48(d)(1) (1986). Hercules urges that the evidence in Hercules II pertaining to the Union's reluctance to sign a trade secret agreement, to the Company's well-ordered plan to distribute information, and to the hygienist's qualifications would have required the Board to reach a different result in Hercules I. These circumstances are hardly "extraordinary" and the Board's

denial of Hercules' motion was not an abuse of discretion.

### IV

Through an oversight, the actual written Board order failed to incorporate the provision that a trade secret agreement be executed before access is allowed. Enforcement is granted contingent upon incorporation of such a provision into the order. With this condition, Hercules' petition for review is denied and the Board's petition for enforcement is granted.

Petition for review denied and enforcement granted.