H.B. ZACHRY COMPANY, Petitioner,

v.

NATIONAL LABOR RELATIONS BOARD, Respondent.

Associated Builders and Contractors, Inc.; Associated General Contractors of America, Inc.; International Brotherhood of Boilermakers, Amici Curiae.

NATIONAL LABOR RELATIONS BOARD, Petitioner,

v.

H.B. ZACHRY COMPANY, Respondent,

Associated Builders and Contractors, Inc.; Associated General Contractors of America, Inc.; International Brotherhood of Boilermakers, Amici Curiae.

Nos. 88–2615(L), 88–2616.

United States Court of Appeals, Fourth Circuit.

Argued May 9, 1989.

Decided Sept. 20, 1989.

William E. Twomey, Jr. (Thomas G. Hardy, III, McGuire, Woods, Battle & Boothe, Richmond, Va., on brief) for petitioner H.B. Zachry Co.

Collis Suzanne Stocking, Supervisory Atty. (Rosemary M. Collyer, Gen. Counsel, Robert E. Allen, Associate Gen. Counsel, Aileen A. Armstrong, Deputy Associate Gen. Counsel, N.L.R.B., Washington, D.C., on brief) for respondent N.L.R.B.

Michael E. Kennedy, on brief, for amicus curiae, The Associated General Contractors of America, Inc. in support of petitioner.

Robert G. Ames, Patrick J. Stewart, Venable, Baetjer, Howard & Civiletti, Washington, D.C., on brief, for amicus curiae Associated Builders and Contractors, Inc. in support of petitioner.

Michael T. Manley, Robert L. Dameron, Blake & Uhlig, P.A., Kansas City, Mo., on brief, for amicus curiae International Broth. of Boilermakers in support of the NLRB.

Before RUSSELL and WILKINSON, Circuit Judges, and TURK, Chief United States District Judge for the Western District of Virginia, sitting by designation.

WILKINSON, Circuit Judge:

H.B. Zachry Company petitions for review of a decision by the National Labor Relations Board which found Zachry guilty of unfair labor practices. 289 NLRB 117 (1988). The Board held that Zachry violated various sections of the National Labor Relations Act when it refused to hire a fully-paid professional union organizer. Because we find that Edwards was not a bona fide applicant for employment and therefore not covered under the Act, we deny enforcement of the Board's order.

## I.

Barry Edwards was first employed by Zachry at its Roxboro, North Carolina site as a journeyman boilermaker welder on March 28, 1980. Edwards successfully completed welding tests for heavy and light wall construction. The record reflects that his work was satisfactory, and that he was proficient at his trade.

Edwards, however, was discharged in what the Board found to be an unfair labor practice in violation of sections 8(a)(1) and (3) of the Act, *H.B. Zachry Co.*, 261 NLRB 681 (1982). Zachry was ordered, *inter alia*, to reinstate Edwards to his former job at the Roxboro project with full backpay. By the time the reinstatement order was issued, however, the work at the Roxboro project had been completed.

In 1984 and 1985, Edwards applied without success to work for Zachry in Chesapeake, Virginia, where the company was constructing and repairing boilers for the Virginia Electric and Power Company. Zachry's final refusal to hire Edwards occurred on August 20, 1985. At the time he was applying to work for Zachry in Chesapeake, Edwards was a full-time union organizer and planned to remain, concurrent with his employment by Zachry, in the employment of the union. If Edwards had been able to gain employment with Zachry, the union had intended to make up any shortfall in his salary. In addition, the union would have continued payments for his health and life insurance and pension. It also would have paid his daily transportation expenses to and from the job and any living expenses related to the job. Edwards concedes that he sought employment in order to enter the plant and organize.

Zachry never hired Edwards at the Chesapeake site. The Board, in agreement with the administrative law judge, found that the company violated sections 8(a)(1), (3), and (4) of the Act by refusing to hire Edwards because he had participated in a Board proceeding against the company in connection with his work at Roxboro and

because he was a union organizer.[1] In so holding, the Board relied heavily on a line of its decisions originating with *Oak Apparel*, 218 NLRB 120 (1975). In *Oak Apparel*, the Board ruled that a professional union organizer is an employee within the meaning of the NLRA.

Zachry appeals, claiming primarily that Edwards' position as a professional union organizer fully justified its refusal to hire him under the Act. The record reflects that Edwards' status as a paid union organizer would alone have caused the company to deny him employment. *See NLRB v. Transportation Management*, 462 U.S. 393, 103 S.Ct. 2469, 76 L.Ed.2d 667 (1983). We must therefore address the lawfulness of that decision.

## II.

█ We deny enforcement of the Board's order because we find that Edwards was not a bona fide applicant for employment as that term is understood in the National Labor Relations Act. Although the Act explicitly refers only to the protections afforded "employees," the Supreme Court has held that "applicants" for employment are likewise protected. *See Phelps Dodge Corp. v. NLRB*, 313 U.S. 177, 61 S.Ct. 845, 85 L.Ed. 1271 (1940). Thus, in defining "applicant," we are called upon to give content to a term not actually found within the relevant portions of the Act. Because an "applicant" is a prospective employee, however, we look to the meaning of the term "employee" to inform our understanding of what it means to be an "applicant."

Although the task of defining the term "employee" or, in this case, "applicant," has been assigned primarily to the NLRB as the agency created by Congress to administer the Act, the Court has "never immunized Board judgments from judicial review in this respect." *Chemical Workers v. Pittsburgh Glass*, 404 U.S. 157, 166, 92 S.Ct. 383, 390, 30 L.Ed.2d 341 (1971) citing *NLRB v. Hearst Publications*, 322 U.S. 111, 131, 64 S.Ct. 851, 860, 88 L.Ed. 1170 (1944). The Act itself provides a section defining "employee" for purposes of the Act, 29 U.S.C. § 152(3).[2] The definitional section, however, merely outlines the types of employment covered by the statute; it does not absolve courts of the duty to interpret the plain language of the statute or the plain meaning of the term "employee" itself.

The Board argues that the definition of the term "employee" is sufficiently broad to include persons concurrently employed, supervised, and paid by another employer. It asserts that if hired, Edwards would do the work assigned him by Zachry and would work under the same conditions as any other Zachry employee. Thus, the Board contends, Edwards should be protected under the Act just as any other

---

**1.** Section 8(a)(1) states that it shall be an unfair labor practice for an employer to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in section 7. Section 7 guarantees employees "the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining ..." Under section 8(a)(3), it is an unfair labor practice for an employer "by discrimination in regard to hire or tenure of employment or any term or condition of employment to encourage or discourage membership in any labor organization." Section 8(a)(4) prohibits an employer from "discharg(ing) or otherwise discriminat(ing) against an employee because he has filed charges or given testimony under this subchapter."

**2.** 29 U.S.C. § 152(3), states in relevant part:

The term 'employee' shall include any employee, and shall not be limited to the employees of a particular employer, unless this subchapter explicitly states otherwise, and shall include any individual whose work has ceased as a consequence of, or in connection with, any current labor dispute or because of any unfair labor practice, and who has not obtained any other regular and substantially equivalent employment, but shall not include any individual employed as an agricultural laborer or in the domestic service of any family or person at his home, or any individual employed by his parent or spouse, or any individual having the status of an independent contractor, or any individual employed by an employer subject to the Railway Labor Act, as amended from time to time, or by any other person who is not an employer as herein defined.

employee or, in this case, just as any other applicant.

The Board's argument exalts form over substance. Though if hired Edwards would undoubtedly share some of the external characteristics of a Zachry employee, at core he would remain an employee of the union. An employee is a person who while on the job works under the direction of a single employer. Although discrimination on the basis of union membership, union sympathies, or protected union activities is plainly forbidden under the Act, 29 U.S.C. § 158(a), many of the normal incidents of the employer-employee relationship remain intact. The House of Representatives, when proposing in 1947 to override the Board's interpretation of "employees" to include independent contractors, described the intended definition of employee under the Act as follows: " '*Employees' work for wages or salaries under direct supervision* . . . . It is inconceivable that Congress, when it passed the Act, authorized the Board to give to every word in the act whatever meaning it wished. On the contrary, Congress intended then, and it intends now, that the Board give to words not far-fetched meanings but ordinary meanings." H.R.Rep. No. 245, 80th Cong. 1st Sess., 18 (1947), *quoted in Chemical Workers v. Pittsburgh Glass*, 404 U.S. 157, 167–68, 92 S.Ct. 383, 391–92, 30 L.Ed.2d 341 (1971) (holding that retired workers were clearly not included in the ordinary meaning of "employee").

If Edwards simultaneously performs services for Zachry at his union employer's behest, he nonetheless remains in the union's employ, even though he receives some remuneration from Zachry. He cannot be considered an employee of Zachry since he is performing services for Zachry only because instructed to do so by his union employer. This is not to say that an employee owes his employer some type of transcendent loyalty; rather, it is only to emphasize that the plain meaning of the term "employee" contemplates an employee working under the direction of a single employer. The term plainly does not contemplate someone working for two different employers at the same time and for the same working hours.

The terms under which Edwards proposed to work for Zachry illustrate well why he is not an "employee" of Zachry within the meaning of the Act. Edwards testified at trial that he had been employed since 1983 as a full-time, professional organizer for the union. He first served as an organizer for Local 30 of the International Brotherhood of Boilermakers, Iron Shipbuilders, Blacksmiths, Forgers, and Helpers, AFL–CIO. Since January 1, 1987, he has been an organizer and representative of the International Union. Zachry further testified that he was instructed by his supervisor in the union to go to the Chesapeake job site, secure employment and begin organizing. During the entire time Edwards sought employment with Zachry he was employed by the union as a paid full-time organizer. The parties also stipulated that Edwards would have remained at all times employed by the union and supervised by the union, even during the precise hours he was to work for Zachry. Once Edwards obtained employment from Zachry the amount of his salary from the union would have been reduced by the amount of his wages from Zachry. The union would have continued, as we have noted, to make full payments towards Edwards' health and life insurance and pension, because during this period Edwards was deemed to be on union business. It would distort the plain meaning of the word "employee" to hold that Edwards could ever be an employee of Zachry under these terms.

So too, it would be disingenuous to say that Edwards was a job applicant in the ordinary sense of the word. Edwards was not in search of a job; he already had and would continue to have that. Edwards was looking for entry to the Zachry plant in order to fulfill his duties as an organizer.

The Board has recognized the difficulties in equating a full-time union organizer with a bona fide employee under certain circumstances. Although the Board in *Sears, Roebuck and Co.*, 170 NLRB 533, 535 n. 1 (1968), found that a paid union organizer

was a bona fide employee under the Act, the Board went on to say that if an applicant "seeks only temporary employment in order to organize, and withholds from his employer the fact that he seeks only temporary employment, a different result might follow." *See also Dee Knitting Mills*, 412 NLRB 1041 (1974). It is hardly unreasonable, of course, for a company to assume that a paid organizer would prefer to stay on the job only temporarily, i.e., for the length of the organizational campaign, and not until a project was complete. It is not, however, merely the temporary nature of a full-time union organizer's interest in employment which distinguishes him or her from a bona fide applicant, but the entire character of the future employment relationship. Edwards' interest in applying to Zachry for employment was qualitatively different from that of a bona fide applicant.

The Board's contention that a paid union organizer is a bona fide applicant protected under the NLRA is even more plainly wrong when examined in light of the policy concerns underlying the Act. The Act presupposes some degree of adversariness between employers and unions. In order to protect the right of employees to determine for themselves, free from undue interference from either employer or union, whether or not to unionize, the Act places limits on the context in which this adversariness operates. *See Carpenters' Union v. NLRB*, 357 U.S. 93, 99–100, 78 S.Ct. 1011, 1016, 2 L.Ed.2d 1186 (1958) (recognizing that the NLRA and its amendments strike a "balance ... between the uncontrolled power of management and labor to further their respective interests"). For instance, section 8(a) of the Act restricts the tactics in which an employer can engage to influence the decision of its employees; section 8(b) restricts union tactics. In effect, the Act defines the terms on which union and employer can compete in seeking to convince the employees of the respective pros and cons of unionization. *See NLRB v. Drivers Local Union*, 362 U.S. 274, 287–88, 80 S.Ct. 706, 714, 4 L.Ed.2d 710 (1960) (quoting from legislative history of § 8(b), 93 Cong.Rec. 4436).

To rule that a paid union organizer such as Edwards is a bona fide applicant protected by the Act would be to upset the careful balance struck by Congress. For example, a union does not have an absolute right to enter an employers' premises even for section 7 activities protected under section 8(a)(1) of the Act. In *NLRB v. Babcock & Wilcox*, 351 U.S. 105, 110, 76 S.Ct. 679, 683, 100 L.Ed. 975 (1956), the Court held that an employer is within its rights to post its property against nonemployee distribution of union literature. "The Act requires only that the employer refrain from interference, discrimination, restraint or coercion in the employees' exercise of their own rights. It does not require that the employer permit the use of its facilities for organization when other means are readily available." *Babcock*, 351 U.S. at 113–14, 76 S.Ct. at 684–85. To require Zachry to allow Edwards to solicit and organize on its property because he was claiming entrance as a "job applicant" would render ineffective the protection offered employers in the *Babcock* decision. *See also Central Hardware Co. v. NLRB*, 439 F.2d 1321, 1328 (8th Cir.1971), *rev'd on other grounds*, 407 U.S. 539, 92 S.Ct. 2238, 33 L.Ed.2d 122 (1972), *on remand*, 468 F.2d 252 (8th Cir. 1972) (company had a right to bar union organizer from entering store because he was not a bona fide customer as his primary purpose was to check employees, thus disrupting selling areas).

Similarly, including Edwards within the definition of "applicant" impinges directly on the Zachry employees' right to self-determination. *See Emporium Capwell Co. v. Community Org.*, 420 U.S. 50, 61–62, 95 S.Ct. 977, 984, 43 L.Ed.2d 12 (1975). Once employed, Edwards would have the same right as any other employee to vote in elections concerning union representation. Unlike other employees, however, Edwards, because of his simultaneous employment with the union, would essentially be paid by the union to cast his ballot in its favor. It is not unthinkable that Edwards' vote might be the decisive one in favor of union representation, saddling the bona fide employees with a union which a major-

ity did not favor. If the practice here is accorded judicial approval, a union might command significant numbers of its employees to work for corporations in which elections are anticipated in order to skew the results. Because the salary paid such "employees" by the company would partially relieve the union of its obligation to pay its own organizers, this tactic ironically could be construed to compel employers to subsidize labor organizations in violation of section 8(a)(2) of the Act (making it an unfair labor practice for an employer to "contribute financial or other support" to a labor organization). It is difficult to imagine a scenario under the congressional scheme more slanted to one side's advantage. For all the foregoing reasons, we are unable to agree with the Board's construction of the term "applicant" to include concurrently employed, paid union organizers, and we reject the reasoning of *Oak Apparel* and its progeny.

■ The Board contends, however, that the administrative law judge found that Zachry had no formal policy denying employment to all persons concurrently employed elsewhere, and complains that Zachry therefore discriminated against Edwards based on his union affiliation. While it is true that the ALJ found that Zachry had no established policy against hiring such persons, we do not demand evidence of a formal policy. The simultaneous employment of a job applicant with another employer is such an obvious basis on which to make an employment decision that one would not think a full-fledged policy necessary. Not only would divided loyalties be a problem if the other employer were a competitor; simultaneous direction and supervision might tax the energies and concentration of an employee, impairing his productivity and compromising his value to the company. A decision to hire only those applicants who will, without question, answer to only one employer is so peculiarly a matter of management prerogative, that it must be protected as an employer's right as long as it is not applied in a manner which discriminates against union employees. *See also N.L.R.B. v. Elias Brothers Big Boy, Inc.,* 327 F.2d 421, 426–27 (6th

Cir.1964) (discharge of paid union worker found not to be in violation of the Act). The Board cites us no instance of Zachry hiring persons simultaneously employed elsewhere. Absent such a showing, we refuse to hold that Zachry discriminated against Edwards because the union was his employer.

The Act makes plain that special consideration need not be accorded applicants for employment on the basis of their union affiliation. "The natural construction which the text, the legislative setting and the function of the statute command, does not impose an obligation on the employer to favor union membership in hiring employees." *Phelps Dodge,* 313 U.S. at 186, 61 S.Ct. at 848. For the Board to prevail, we would have to hold either that paid full-time union organizers are to be treated more favorably than any other paid full-time worker who applies for employment at Zachry, or that the employer has no legal right to refuse to hire those who have every intention of remaining in the concurrent employment of another employer. Neither ruling is supportable.

We emphasize, however, the circumscribed nature of our holding. We uphold the employer's right to reject a job applicant simultaneously paid and supervised by another employer. We do not encroach, however, upon the fundamental purpose of the NLRA to protect those with union sympathies and allegiances from unfair practices. The Act is designed to protect those loyal to labor unions from discrimination in future applications for employment. We do not, for example, have before us applicants for employment who have, in the past, organized workers for collective bargaining rights, or applicants who have received payment or reimbursement from a union in the form of strike benefits. We do not deal here with those who moonlight. Nor do we have here a company that has a policy of accepting applicants already fully employed, yet then rejects an applicant because he is fully employed by a union.

For the purposes of our inquiry, we must decide only whether Zachry unfairly discriminated against Edwards based upon his

union activities. *Transportation Management,* 462 U.S. at 394, 103 S.Ct. at 2470. We find that the relationship between Edwards and the union consists not merely of activities, which are protected under the Act, but instead is an ongoing employment relationship, which is not protected under the Act. We hold Zachry's refusal to hire Edwards was permissible under the Act, and we deny enforcement of the Board's order.

ENFORCEMENT DENIED.