# NATIONAL LABOR RELATIONS BOARD *v.* BABCOCK & WILCOX CO.

NO. 250.

Argued January 25, 1956.—Decided April 30, 1956.

*Dominick L. Manoli* argued the causes for the National Labor Relations Board. With him on the briefs were *Solicitor General Soboloff, Theophil C. Kammholz* and *David P. Findling.*

*O. B. Fisher* argued the cause and filed a brief for respondent in No. 250.

*Karl H. Mueller* argued the cause for respondent in No. 251. With him on the brief was *Howard Lichtenstein.*

*Eugene B. Schwartz* argued the cause for petitioner in No. 422. With him on the brief were *Harry E. Smoyer* and *V. Jay Einhart.*

MR. JUSTICE REED delivered the opinion of the Court.

In each of these cases the employer refused to permit distribution of union literature by nonemployee union organizers on company-owned parking lots. The National Labor Relations Board, in separate and unrelated proceedings, found in each case that it was unreasonably difficult for the union organizer to reach the employees off company property and held that, in refusing the unions access to parking lots, the employers had unreasonably impeded their employees' right to self-organization in violation of § 8 (a)(1) of the National Labor Relations Act. *Babcock & Wilcox Co.,* 109 N. L. R. B. 485, 494; *Ranco, Inc., id.,* 998, 1007, and *Seamprufe, Inc., id.,* 24, 32.

The plant involved in No. 250, *Labor Board* v. *Babcock & Wilcox Co.,* is a company engaged in the manufacture of tubular products such as boilers and accessories, located on a 100-acre tract about one mile from a community of 21,000 people. Approximately 40% of the 500 employees live in that town and the remainder live within a 30-mile radius. More than 90% of them drive to work in private

automobiles and park on a company lot that adjoins the fenced in plant area. The parking lot is reached only by a driveway 100 yards long which is entirely on company property excepting for a public right-of-way that extends 31 feet from the metal of the highway to the plant's property. Thus, the only public place in the immediate vicinity of the plant area at which leaflets can be effectively distributed to employees is that place where this driveway crosses the public right-of-way. Because of the traffic conditions at that place the Board found it practically impossible for union organizers to distribute leaflets safely to employees in motors as they enter or leave the lot. The Board noted that the company's policy on such distribution had not discriminated against labor organizations and that other means of communication, such as the mail and telephones, as well as the homes of the workers, were open to the union.[1] The employer justified its refusal to allow distribution of literature on company property on the ground that it had maintained a consistent policy of refusing access to all kinds of pamphleteering and that such distribution of leaflets would litter its property.

The Board found that the parking lot and the walkway from it to the gatehouse, where employees punched in for work, were the only "safe and practicable" places for distribution of union literature. The Board viewed the

---

[1] *"Other union contacts with employees:* In addition to distributing literature to some of the employees, as shown above, during the period of concern herein the Union has had other contacts with some of the employees. It has communicated with over 100 employees of Respondent on 3 different occasions by sending literature to them through the mails. Union representatives have communicated with many of Respondent's employees by talking with them on the streets of Paris, by driving to their homes and talking with them there, and by talking with them over the telephone. All of these contacts have been for the purpose of soliciting the adherence and membership of the employees in the Union." 109 N. L. R. B., at 492–493.

place of work as so much more effective a place for communication of information that it held the employer guilty of an unfair labor practice for refusing limited access to company property to union organizers. It therefore ordered the employer to rescind its no-distribution order for the parking lot and walkway, subject to reasonable and nondiscriminating regulations "in the interest of plant efficiency and discipline, but not as to deny access to union representatives for the purpose of effecting such distribution." 109 N. L. R. B., at 486.

The Board petitioned the Court of Appeals for the Fifth Circuit for enforcement. That court refused enforcement on the ground the statute did not authorize the Board to impose a servitude on the employer's property where no employee was involved. *Labor Board* v. *Babcock & Wilcox Co.,* 222 F. 2d 316.

The conditions and circumstances involved in No. 251, *Labor Board* v. *Seamprufe, Inc.,* and No. 422, *Ranco, Inc.* v. *Labor Board,* are not materially different, except that *Seamprufe* involves a plant employing approximately 200 persons and in the *Ranco* case it appears that union organizers had a better opportunity to pass out literature off company property. The Board likewise ordered these employers to allow union organizers limited access to company lots. The orders were in substantially similar form as that in the *Babcock & Wilcox* case. Enforcement of the orders was sought in the Courts of Appeals. The Court of Appeals for the Tenth Circuit in No. 251, *Labor Board* v. *Seamprufe, Inc.,* 222 F. 2d 858, refused enforcement on the ground that a nonemployee can justify his presence on company property only "as it bears a cogent relationship to the exercise of the employees' guaranteed right of self-organization." These "solicitors were therefore strangers to the right of self-organization, absent a showing of nonaccessibility amounting to a handicap to self-organization." *Id.,* at 861. The Court of Appeals

for the Sixth Circuit in No. 422 granted enforcement. *Labor Board* v. *Ranco, Inc.*, 222 F. 2d 543. The *per curiam* opinion depended upon its decision in *Labor Board* v. *Monarch Tool Co.*, 210 F. 2d 183, a case in which only employees were involved; *Labor Board* v. *Lake Superior Lumber Corporation*, 167 F. 2d 147, an isolated lumber camp case; and our *Republic Aviation Corp.* v. *Labor Board*, 324 U. S. 793. It apparently considered, as held in the *Monarch Tool* case, *supra,* at 186, that the attitude of the employer in the *Ranco* case was an "unreasonable impediment to the freedom of communication essential to the exercise of its employees' rights to self organization." Because of the conflicting decisions on a recurring phase of enforcement of the National Labor Relations Act, we granted certiorari. 350 U. S. 818, 894.

In each of these cases the Board found that the employer violated § 8 (a)(1) of the National Labor Relations Act, 61 Stat. 140, making it an unfair labor practice for an employer to interfere with employees in the exercise of rights guaranteed in § 7 of that Act. The pertinent language of the two sections appears below.[2] These holdings were placed on the Labor Board's determination in *LeTourneau Company of Georgia,* 54 N. L. R. B. 1253. In the *LeTourneau* case the Board balanced the conflicting interests of employees to receive information on self-organization on the company's property from fellow employees during nonworking time,

---

[2] "SEC. 7. Employees shall have the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection . . . .

"SEC. 8 (a). It shall be an unfair labor practice for an employer—

"(1) to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in section 7 . . . ." 61 Stat. 140, 29 U. S. C. §§ 157, 158 (a)(1).

with the employer's right to control the use of his property and found the former more essential in the circumstances of that case.[3] Recognizing that the employer could restrict employees' union activities when necessary to maintain plant discipline or production, the Board said: "Upon all the above considerations, we are convinced, and find, that the respondent, in applying its 'no-distributing' rule to the distribution of union literature by its employees on its parking lots has placed an unreasonable impediment on the freedom of communication essential to the exercise of its employees' right to self-organization," *LeTourneau Company of Georgia,* 54 N. L. R. B., at 1262. This Court affirmed the Board. *Republic Aviation Corp.*

---

[3] "As previously indicated, the respondent's plant is located in the country in the heart of 6,000 acres of land owned by it or its subsidiary. Apart from U. S. Highway No. 13 (and perhaps the intersecting road), the respondent and its subsidiary own all the land adjacent to the plant. This, in itself, seriously limits the possibilities of effectively communicating with the bulk of the respondent's employees. This limitation would not, however, be too restrictive if the respondent's gate opened directly onto the highway, for then persons could stand outside the respondent's premises and distribute literature as each employee entered or left the plant. But at the respondent's plant the gate is 100 feet back from the highway, on company property. Over 60 percent of the respondent's employees, after passing the gate, enter automobiles or busses parked in the space between the gate and the highway, and presumably speed homeward, without ever setting foot on the highway. Distribution of literature to employees is rendered virtually impossible under these circumstances, and it is an inescapable conclusion that self-organization is consequently seriously impeded. It is no answer to suggest that other means of disseminating union literature are not foreclosed. Moreover, the employees' homes are scattered over a wide area. In the absence of a list of names and addresses, it appears that direct contact with the majority of the respondent's employees away from the plant would be extremely difficult." *LeTourneau Company of Georgia,* 54 N. L. R. B., at 1260–1261.

v. *Labor Board,* 324 U. S. 793, 801 *et seq.* The same rule had been earlier and more fully stated in *Peyton Packing Co.,* 49 N. L. R. B. 828, 843–844.

The Board has applied its reasoning in the *LeTourneau* case without distinction to situations where the distribution was made, as here, by nonemployees. *Carolina Mills,* 92 N. L. R. B. 1141, 1149, 1168–1169.[4] The fact that our *LeTourneau* case ruled only as to employees has been noted by the Courts of Appeal in *Labor Board* v. *Lake Superior Lumber Corp.,* 167 F. 2d 147, 150, and *Labor Board* v. *Seamprufe, Inc.,* 222 F. 2d, at 860. Cf. *Labor Board* v. *American Furnace Co.,* 158 F. 2d 376, 380.

In these present cases the Board has set out the facts that support its conclusions as to the necessity for allowing nonemployee union organizers to distribute union literature on the company's property. In essence they are that nonemployee union representatives, if barred, would have to use personal contacts on streets or at home, telephones, letters or advertised meetings to get in touch with the employees. The force of this position in respect to employees isolated from normal contacts has been recognized by this Court and by others. See *Republic Aviation Corporation* v. *Labor Board, supra,* at 799, note 3; *Labor Board* v. *Lake Superior Lumber Corp., supra,* at 150. We recognize, too, that the Board has the responsibility of "applying the Act's general prohibitory language in the light of the infinite combinations of

---

[4] An element of discrimination existed in the *Carolina Mills* case, 92 N. L. R. B., at 1142, such as existed in *Labor Board* v. *Stowe Spinning Co.,* 336 U. S. 226, 230, 233, but this was not relied upon in the opinion. See also *Caldwell Furniture Co.,* 97 N. L. R. B. 1501, 1502, 1509; *Monarch Machine Tool Co.,* 102 N. L. R. B. 1242, 1248, enforced, *Labor Board* v. *Monarch Tool Co.,* 210 F. 2d 183. For a collection of Board cases, see *Ranco, Inc.,* 109 N. L. R. B. 998, 1006, and Note, 65 Yale L. J. 423.

events which might be charged as violative of its terms." *Labor Board* v. *Stowe Spinning Co.*, 336 U. S. 226, 231. We are slow to overturn an administrative decision.

It is our judgment, however, that an employer may validly post his property against nonemployee distribution of union literature if reasonable efforts by the union through other available channels of communication will enable it to reach the employees with its message and if the employer's notice or order does not discriminate against the union by allowing other distribution. In these circumstances the employer may not be compelled to allow distribution even under such reasonable regulations as the orders in these cases permit.

This is not a problem of always open or always closed doors for union organization on company property. Organization rights are granted to workers by the same authority, the National Government, that preserves property rights. Accommodation between the two must be obtained with as little destruction of one as is consistent with the maintenance of the other. The employer may not affirmatively interfere with organization; the union may not always insist that the employer aid organization. But when the inaccessibility of employees makes ineffective the reasonable attempts by nonemployees to communicate with them through the usual channels, the right to exclude from property has been required to yield to the extent needed to permit communication of information on the right to organize.

The determination of the proper adjustments rests with the Board. Its rulings, when reached on findings of fact supported by substantial evidence on the record as a whole,[5] should be sustained by the courts unless its conclusions rest on erroneous legal foundations. Here the

---

[5] *Universal Camera Corp.* v. *Labor Board*, 340 U. S. 474, 491.

Board failed to make a distinction between rules of law applicable to employees and those applicable to non-employees.[6]

The distinction is one of substance. No restriction may be placed on the employees' right to discuss self-organization among themselves, unless the employer can demonstrate that a restriction is necessary to maintain production or discipline. *Republic Aviation Corp.* v. *Labor Board,* 324 U. S. 793, 803. But no such obligation is owed nonemployee organizers. Their access to company property is governed by a different consideration. The right of self-organization depends in some measure on the ability of employees to learn the advantages of self-organization from others. Consequently, if the location of a plant and the living quarters of the employees place the employees beyond the reach of reasonable union efforts to communicate with them, the employer must allow the union to approach his employees on his property. No such conditions are shown in these records.

The plants are close to small well-settled communities where a large percentage of the employees live. The usual methods of imparting information are available. See, *e. g.,* note 1, *supra.* The various instruments of publicity are at hand. Though the quarters of the employees are scattered they are in reasonable reach. The Act re-

---

[6] In the *Seamprufe* case the examiner's report, approved by the Board, said: "To differentiate between employees soliciting on behalf of the Union and nonemployee union solicitors would be a differentiation not only without substance but in clear defiance of the rationale given by the Board and the courts for permitting solicitation. This conclusion is based on the belief that the rationale enunciated by the Supreme Court in the *LeTourneau* case, *supra,* is equally applicable in the case of solicitation by union representatives as well as where the solicitation is done by employees." 109 N. L. R. B., at 32. See also *Babcock & Wilcox Co., id.,* at 493, and *Ranco, Inc., id.,* at 1006.

quires only that the employer refrain from interference, discrimination, restraint or coercion in the employees' exercise of their own rights. It does not require that the employer permit the use of its facilities for organization when other means are readily available.

Labor Board v. Babcock & Wilcox Co., No. 250, is

Affirmed.

Labor Board v. Seamprufe, Inc., No. 251, is

Affirmed.

Ranco, Inc. v. Labor Board, No. 422, is

Reversed.

MR. JUSTICE HARLAN took no part in the consideration or decision of these cases.