**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**MURPHY DIESEL COMPANY, a Delaware corporation, Respondent.**

No. 12389.

United States Court of Appeals Seventh Circuit.

Feb. 9, 1959.

**302**

Thomas J. McDermott, Associate Gen. Counsel, Richard H. Frank, Atty., N. L. R. B., Washington, D. C., Jerome D. Fenton, Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, Arnold Ordman, Atty., N. L. R. B., Washington, D. C., for petitioner.

O. S. Hoebreckx, Milwaukee, Wis., Robertson, Hoebreckx & Davis, Milwaukee, Wis., for respondent.

Before SCHNACKENBERG, HASTINGS and KNOCH, Circuit Judges.

SCHNACKENBERG, Circuit Judge.

The petition of the National Labor Relations Board asks that we enforce an order issued by it against Murphy Diesel Company, a Delaware corporation, respondent, on May 14, 1958.

A trial examiner, as well as the board, found that respondent had violated § 8 (a)(1) of the National Labor Relations Act, as amended,[1] when it laid off employees because they refused to remove from their tool boxes and other personal property signs advertising the time set for a strike wihch had been called by

District No. 10, International Association of Machinists, AFL-CIO, herein called the union.[2] The signs read "November 20, 7:00 A.M." The union, which represented respondent's employees, on August 16, 1956 gave respondent notice of its desire to reopen the existing collective bargaining agreement for the purpose of wage negotiations. Such negotiations failed to produce an agreement and the strike date was fixed by the union, at a regular meeting on November 3, 1956, where a proposal that each member put a sign carrying the said legend on his personal belongings met with general applause. Two days later the signs appeared, not only on the personal belongings but also on respondent's machines and walls. Respondent objected and accordingly each man removed the signs from his personal property and the chairman of the union's bargaining committee removed the signs on respondent's property. However, on November 6, 1956, employee Blumke posted such a sign on the inside cover of his personal tool box, whereupon his foreman directed him to remove it. Blumke reluctantly did so. On the succeeding day Blumke again put the sign on his tool box and when his foreman directed him to remove it on penalty of discharge, Blumke refused to comply. Thereupon Lewis, respondent's general manager, called in the union bargaining and grievance committee to announce that a grievance concerning the sign dispute was pending and that Blumke would be discharged if he persisted in his refusal to remove the sign. The committee got permission to have union business agent Grunke called into the conference. Grunke, when he appeared, defended Blumke's right to put signs on his personal property. However, when Blumke, in the presence of Lewis, Grunke, and the committee, persisted in his refusal to remove the sign, Lewis laid him off for one week.

Immediately after this conference of November 7, which ended at about 11:45

---

1. 29 U.S.C.A. § 158(a) (1).

2. The Board found, contrary to the examiner, that a violation of § 8(a) (3) of the Act had also been proved.

A.M., Grunke had the employees notified to attend a union meeting during lunch hour. At that meeting, the employees were informed of Blumke's layoff and they unanimously decided to protest this action by posting strike date notices on their persons and on such personal property as tool boxes and lunch pails, but not on respondent's property. Upon their return to work, the employees displayed the controversial signs on tool boxes, clothes, dinner pails, the wall of the shop, as well as on the bulletin boards, and, pursuant to orders of Lewis, 154 additional employees were laid off for one week.

On November 8, representatives of respondent and the union met to resolve the matter. The parties agreed that strike date notices would be posted on respondent's bulletin boards and not on personal property, and that the laid-off employees would be recalled to work the following Monday, November 12.

Subsequently a number of the employees filed grievances. However, because of a disagreement as to the terms of a referral to arbitration, these grievances were not processed to a conclusion. Instead, the union filed the unfair labor practice charges giving rise to the instant proceeding. The board rejected respondent's contention that the disciplinary action of layoff was a reprisal against the employees for littering the plant, for interfering with production and for adversely affecting discipline, and held that, when the employees displayed the notices in question, they were engaged in a protected concerted activity which was devoid of disruptive or defamatory influence. It followed, the board found, that respondent's imposition of layoffs for engaging in that activity constituted unlawful interference with a right guaranteed employees by section 7 of the Act [3] and a violation of section 8(a)(1) of the Act; and, in addition, it found that respondent's conduct in this regard also constituted unlawful discrimination within the meaning of section 8(a)(3) of the Act. The board concluded that the layoff of the 155 employees was directed against union activities and tended to discourage union membership within the meaning of section 8(a)(3). The board directed respondent to make whole the 155 employees for any earnings lost by reason of its unlawful conduct and to post appropriate notices.

The evidence shows that the union had the privilege of posting notices on bulletin boards in the plant and that for special notices it was customary to use that method of communication. The record further shows that the calling of the strike was decided upon by the members in a regular union meeting. Moreover, the inference is reasonable that by word of mouth the strike date was made known to any members who did not attend the meeting. It was unnecessary to display on the premises signs such as those now in question. There was no emergency requiring sudden notice of the calling of the strike. November 20, the strike day, was fifteen days in the future when respondent objected the first time to the display of these signs.

It is noteworthy that the signs had nothing to do with union organization efforts. The union in this case had already been recognized and was acting for the employees. No legitimate purpose has been made to appear for the exhibition of these signs. One is therefore required to conjecture as to the purpose. We are forced to conclude that the signs' display by numerous employees on respondent's premises during working hours was to taunt respondent and its supervisory employees. It was unworthy of wholesome unionism.

In National Labor Relations Board v. Babcock & Wilcox Co., 351 U.S. 105, at page 113, 76 S.Ct. 679, at page 685, 100 L.Ed. 975, the court said:

"* * * The usual methods of imparting information are available. * * * The various instruments of publicity are at hand. * * * It does not require that the employer

3. 29 U.S.C.A. § 157.

permit the use of its facilities for organization when other means are readily available."

In Republic Aviation Corp. v. N. L. R. B., 324 U.S. 793, 803, 65 S.Ct. 982, 988, 89 L.Ed. 1372, the court characterized as a definite ruling the board's holding in the Peyton Packing Company case, 49 N.L.R.B. 828, 843, reading as follows:

"The Act, of course, does not prevent an employer from making and enforcing reasonable rules covering the conduct of employees on company time. Working time is for work. It is therefore within the province of an employer to promulgate and enforce a rule prohibiting union solicitation during working hours. Such a rule must be presumed to be valid in the absence of evidence that it was adopted for a discriminatory purpose. It is no less true that time outside working hours, whether before or after work, or during luncheon or rest periods, is an employee's time to use as he wishes without unreasonable restraint, although the employee is on company property. It is therefore not within the province of an employer to promulgate and enforce a rule prohibiting union solicitation by an employee outside of working hours, although on company property. Such a rule must be presumed to be an unreasonable impediment to self-organization and therefore discriminatory in the absence of evidence that special circumstances make the rule necessary in order to maintain production or discipline."

We are not impressed by the board's assertion that respondent had no rule prohibiting the posting of notices on personal property. The events hereinbefore recounted leading up to the laying off of 155 employees on November 7, "because they refused to remove notices from their personal property in the plant" (to use the language of the board's counsel in his brief), establish that on November 5, respondent's general objection to the posting of these signs was made clear. In the face of this fact the posting of signs proceeded profusely and deliberately.

This flagrant violation of respondent's announced policy against the improper use of these signs during working time on respondent's premises, constituted a proper basis for the layoff of those employees who exhibited the signs after November 5. We hold, therefore, that the layoffs were lawful. For these reasons we refuse to enforce the order and we set it aside.[4]

Order refused enforcement and set aside.