NATIONAL LABOR RELATIONS
BOARD, Petitioner,

v.

KUTSHER'S HOTEL AND COUNTRY
CLUB, INC., Respondent.

No. 530, Docket 34152.

United States Court of Appeals,
Second Circuit.

Argued March 17, 1970.

Decided June 2, 1970.

Janet Carol McCaa, N.L.R.B., Washington, D. C. (Arnold Ordman, General Counsel, Dominick L. Manoli, Associate General Counsel, Marcel Mallet-Prevost, Asst. General Counsel, William Wachter and Stephen J. Solomon, Attorneys, N.L.R.B., Washington, D. C., of counsel), for petitioner.

Joseph S. Rosenthal, New York City (Friedlander, Gaines, Ruttenberg & Goetz, New York City, of counsel), for respondent.

Before MOORE and FEINBERG, Circuit Judges, and BONSAL,* District Judge.

MOORE, Circuit Judge:

The National Labor Relations Board (the Board) petitions this court for enforcement of its order directed against Kutsher's Hotel and Country Club, Inc. (Kutsher's). The opinion of the Board is reported in 175 NLRB No. 76 (April 22, 1969).

The subject matter of the controversy is the alleged denial by Kutsher's of access to its premises to nonemployee union organizers, who desire to communicate with Kutsher's employees for the purpose of organization. Since under the two principal decisions dealing with this question, NLRB v. Babcock & Wilcox Co., 351 U.S. 105, 76 S.Ct. 679, 100 L.Ed 975 (1956) and NLRB v. S & H Grossinger's, Inc:, 372 F.2d 26 (2d Cir. 1967) opportunity for access to the employees appears to be the decisive factor in resolving the issue, the facts must be reviewed primarily from this point of view.

Kutsher's operates a resort hotel in the Catskill Mountains about three miles from Monticello, New York. The hotel facilities are located on the north and south sides of a two-lane hard surface public road (Kutsher Road). On the north side is the main building accommodating primarily the guests in some 300 rooms and containing the dining rooms, recreation rooms, bar, night club and shops. Also, to the north are a lake, an ice rink, swimming pools, ski slopes and an 18-hole golf course. On the south side of the road are the employees' quarters (except for a few, 2–3 percent, who

---

* Of the Southern District of New York, sitting by designation.

have rooms on the north side) and additional outdoor recreational facilities.

The number of employees varies with the seasons. In the summer season (July and August), there are some 350 employees and in the winter, 150 during the week and 250 on weekends. Most of the 120 rooms available for employees are located on the south side of the road. To reach their respective places of work, most of the employees—estimated at some 95 percent—have to cross the public road from their places of residence. These employees wear distinctive uniforms to and from their work stations and thus are capable of identification. Furthermore, their work hours are such that large numbers report at approximately the same hours.

The union's efforts to organize were minimal. There was no proof that the union made any effort during peak seasons or times to communicate with the employees. In early April 1968 union pamphlets and authorization cards were distributed on Kutsher Road between 11:00 a. m. and 2:00 p. m. There is no charge that the union's failure to receive any response from such solicitation was due to any anti-union activity by Kutsher's.

Meetings were called at the union office in Monticello in September and November 1967 and February 1968, but no more than five employees attended. An advertisement in a local paper for four days in May 1968, inquiring as to employees' interest in organizing a union, resulted in no replies. Attempts to reach employees at local bars were unproductive. There was a four-hour pamphlet and card distribution after Labor Day 1968 at Kutsher's main gate during which the union admits that very few pamphlets were handed out and these not well received. The union offered no proof that Kutsher's tried to prevent, or was hostile to, such distribution.

On three occasions between April and September 1968, the union requested access to Kutsher's premises for the purpose of organizing its employees, which requests were ignored.

The Board urges the decisions in Babcock & Wilcox and Grossinger's upon us as requiring the enforcement of the Board's order. In Babcock & Wilcox the Supreme Court said: " * * * if the location of the plant and the living quarters of the employees place the employees beyond the reach of reasonable union efforts to communicate with them, the employer must allow the union to approach his employees on his property." 351 U.S. at 113, 76 S.Ct. at 685. The Board has found a Section 8(a) (1) violation, in essence, that Kutsher's interfered with, restrained and coerced its employees in the exercise of their rights by refusing to permit representatives of the union to enter upon its premises for union organizational purposes. In Grossinger's we recognized that there were two requirements necessary to sustain the Board's rulings (1) that they be "reached on findings of fact supported by substantial evidence on the record as a whole" and (2) that the conclusions not "rest on erroneous legal foundations." 372 F.2d at 30 (quoting Babcock & Wilcox, 351 U.S. at 112, 76 S.Ct. 679).

Applying the Babcock & Wilcox test, we find that the location of the "plant" (Kutsher's Hotel) and the living quarters of the employees were such that there was no barrier to communication. Nor could the scant union efforts made here be characterized as "reasonable" if an effective organizational campaign were being carried on. The "other means" were "readily available" to the union here. Babcock & Wilcox, 351 U.S. at 114, 76 S.Ct. 679. From a factual point of view an a fortiori case to that in Babcock & Wilcox is presented here.

In contrast the situation in Grossinger's was quite different. The employees lived on Grossinger's grounds, accessible from the public highway only through a main gate. Furthermore, Grossinger's presented the case of an employer actively hostile to a union, including anti-union circulars and speeches and threats

to, and interrogation of, employees. There was further union discrimination evidenced by allowing entry onto Grossinger's grounds for solicitation for many other, except union, purposes.

We cannot say to what extent Grossinger's obvious union hostility entered into that decision. However, here, except for a refusal to allow strangers to come upon its property for any solicitation purpose, there is no evidence of any action by the employer which could be characterized as anti-union.

Before permitting an invasion of private property for union organizational purposes, there should be ·"substantial evidence on the record as a whole" to justify such an invasion. The record here not only does not show such evidence but does reveal evidence of adequate accessibility had there been reasonable union efforts to this end.

Enforcement denied.