**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

RIESBECK FOOD MARKETS,
INCORPORATED,
Petitioner,

v.

NATIONAL LABOR RELATIONS BOARD,

Respondent,

LOCAL UNION 23, AFL-CIO, CLC,
United Food and Commercial
Workers International Union,
Intervenor.

No. 95-1766

NATIONAL LABOR RELATIONS BOARD,
Petitioner,

LOCAL UNION 23, AFL-CIO, CLC,
United Food and Commercial
Workers International Union,

Intervenor,

v.

RIESBECK FOOD MARKETS,
INCORPORATED,
Respondent.

No. 95-1917

On Petition for Review and Cross-Application
for Enforcement of an Order
of the National Labor Relations Board.
(8-CA-21274, 8-CA-22322)

Argued: April 1, 1996

Decided: July 19, 1996

Before MURNAGHAN and HAMILTON, Circuit Judges, and
LAY, Senior Circuit Judge of the United States Court of Appeals
for the Eighth Circuit, sitting by designation.

_____

Petition for review granted and enforcement denied by unpublished
per curiam opinion. Judge Hamilton wrote a separate opinion concur-
ring in the judgment.

_____

**COUNSEL**

**ARGUED:** Don Alan Zimmerman, SCHMELTZER, APTAKER &
SHEPARD, P.C., Washington, D.C., for Riesbeck. Richard A. Cohen,
NATIONAL LABOR RELATIONS BOARD, Washington, D.C., for
NLRB. James R. Reehl, UNITED FOOD AND COMMERCIAL
WORKERS INTERNATIONAL UNION, LOCAL UNION 23, AFL-
CIO, CLC, Pittsburgh, Pennsylvania, for Intervenor. **ON BRIEF:**
Henry A. Platt, Daniel P. Greenbaum, SCHMELTZER, APTAKER
& SHEPARD, P.C., Washington, D.C., for Riesbeck. Frederick L.
Feinstein, General Counsel, Linda Sher, Acting Associate General
Counsel, Aileen A. Armstrong, Deputy Associate General Counsel,
NATIONAL LABOR RELATIONS BOARD, Washington, D.C., for
NLRB. Peter J. Ford, Assistant General Counsel, UNITED FOOD
AND COMMERCIAL WORKERS INTERNATIONAL UNION,
AFL-CIO, CLC, Washington, D.C., for Intervenor.

_____

Unpublished opinions are not binding precedent in this circuit. See
Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Riesbeck Food Markets, Inc. ("Riesbeck") petitions to set aside the order of the National Labor Relations Board ("NLRB"). The NLRB found that Riesbeck, a non-union employer, committed an unfair labor practice in violation of § 8(a)(1) of the National Labor Relations Act ("NLRA"), 29 U.S.C. § 158(a)(1), by prohibiting union pickets and handbillers who were not Riesbeck's employees from distributing do-not-patronize literature to Riesbeck's customers on Riesbeck's property. See Riesbeck Food Markets, Inc., 315 N.L.R.B. 940 (No. 134) (Dec. 16, 1994).[1] The NLRB and the union, as intervenor, cross-petition for enforcement of the NLRB's order. We grant Riesbeck's petition and deny the cross-petitions.

Background

On September 7, 1988, Local 23 of the United Food and Commercial Workers International Union ("the union") commenced informational picketing and handbilling on Riesbeck's premises near the customer entrances of Riesbeck's food stores in Wheeling, West Virginia, and St. Clairsville, Ohio. The union, which represented employees at a number of Riesbeck's competitors, had previously disclaimed any interest in representing Riesbeck's employees. [2] The handbills and picket signs truthfully said Riesbeck did not employ union labor and asked customers to not patronize Riesbeck. The pickets and handbillers did not interfere with the flow of customers or goods. None of the union pickets or handbillers were employed by Riesbeck. Riesbeck asked the pickets and handbillers to leave its premises, but they refused. Riesbeck commenced trespass lawsuits in both West Virginia and Ohio state courts against the union. The state courts issued preliminary injunctions prohibiting the union's activities on Riesbeck's premises. The union pickets and handbillers thereafter conducted their

_____

[1] The NLRB also found Riesbeck violated § 8(a)(1) because it failed to dissolve state court injunctions against the union after the NLRB's General Counsel issued a complaint against Riesbeck.
[2] In February 1988, Riesbeck gave the union access to its employees as part of an apparent union organizational effort.

3

activities on public property outside the driveway entrances to Riesbeck's stores in accordance with the injunctions.

The union filed unfair labor practice charges and the NLRB's General Counsel issued a complaint against Riesbeck alleging unfair labor practices. The case was tried before an administrative law judge ("ALJ"), who found Riesbeck had committed an unfair labor practice and entered a cease and desist order. After the ALJ's decision, the state courts ultimately vacated their injunctions and dismissed Riesbeck's lawsuits as preempted by the NLRA.

The ALJ found Riesbeck impermissibly discriminated against union solicitation by discriminatorily preventing the union's informational picketing and handbilling. According to the ALJ, Riesbeck "permitted all kinds of civic and charitable solicitation for a total of almost 2 months a year" at its stores, J.A. 37, including candy sales by volunteer fire departments, poppy sales by the Veterans of Foreign Wars, bell ringing by the Salvation Army, and other solicitations by youth sport groups, a school band, and the Easter Seals, but discriminated against the union by not allowing its solicitation.[3]

In a three-to-two decision, the NLRB affirmed the ALJ's determination that Riesbeck had committed an unfair labor practice by discriminating against the union's solicitation. In addition to the fact that Riesbeck allowed significant amounts of charitable solicitations but not the union's solicitation, the NLRB also found Riesbeck's solicitation policy--which provided for limited access to customers by charitable organizations whenever Riesbeck, in its discretion, thought such access would enhance its business--to be inherently discriminatory against protected union solicitation.[4]

_____

[3] The ALJ further found Riesbeck did not independently violate the Act by maintaining its state lawsuits against the union because, under Bill Johnson's Restaurants, Inc. v. NLRB, 461 U.S. 731 (1983), the lawsuits did not lack a reasonable basis and did not reflect a retaliatory motive.
[4] The NLRB further found that maintaining the state court actions against the union was an independent unfair labor practice under Makro, Inc. (Loehmann's Plaza I), 305 N.L.R.B. 663 (No. 81) (Nov. 21, 1991), rev'd on other grounds on rehearing, Makro, Inc. (Loehmann's Plaza II),

Section 7 Rights

Riesbeck first argues the union's do-not-patronize solicitation is not protected activity within the meaning of § 7 of the NLRA, 29 U.S.C. § 157,**5** and thus prohibiting such solicitations is not a violation of § 8(a)(1).**6** Riesbeck contends the union pickets and handbillers, who were not employed by Riesbeck, had no § 7 right to engage in consumer boycott activities against Riesbeck on the basis of Riesbeck's non-union status. Unlike organizational campaigns conducted by union organizers who are not employed by the targeted employer, in which the organizers have rights derivative of employees, e.g., Lechmere, Inc. v. NLRB, 502 U.S. 527, 532 (1992); NLRB v. Babcock & Wilcox Co., 351 U.S. 105, 113 (1956), Riesbeck argues that union pickets, who are not employed by Riesbeck, have no § 7 right to inform Riesbeck's customers that Riesbeck does not employ union labor because such communication is not derivative of the rights of Riesbeck's employees. The NLRB contends, however, that the union representatives who engaged in the consumer boycott activities were not asserting rights derivative of Riesbeck's employees, but rather were asserting their own rights under the "mutual aid or protection" clause of § 7. See Eastex, Inc. v. NLRB , 457 U.S. 556, 564 (1978).

Riesbeck further argues that whether there is a § 7 right to engage in consumer boycott activities against a non-union employer outside

_____

316 N.L.R.B. 109 (No. 24) (Jan. 25, 1995), rev. denied sub nom. United Food & Commercial Workers v. NLRB, 74 F.3d 292 (D.C. Cir. 1996). Loehmann's Plaza I imposed on employers an affirmative duty to stay state court proceedings within seven days after the General Counsel issues a complaint against them. 305 N.L.R.B. at 671.

**5** Section 7 of the NLRA provides:"Employees shall have the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection[.]" 29 U.S.C. § 157.
**6** Section 8(a)(1) of the NLRA provides: "It shall be an unfair labor practice for an employer . . . to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in section 157 of this title[.]" 29 U.S.C. § 158(a)(1).

of the employer's premises, does not resolve the issue of whether that right extends to such activities on the employer's property. The Supreme Court has held that union organizers may come onto an employer's property under two limited circumstances to communicate with employees: first, if there are no other reasonably available channels of communication ("the inaccessibility exception"); and second, "if the employer's notice or order . . . discriminate[s] against the union by allowing other distribution" ("the discrimination exception"). NLRB v. Babcock & Wilcox, 351 U.S. 105, 112 (1956). Accord Lechmere, 502 U.S. at 535; Sears, Roebuck & Co. v. Carpenters, 436 U.S. 180, 205 (1978). In Lechmere, the Court found that the inaccessibility exception was "a narrow one," 502 U.S. at 539, applicable only when "`the location of a plant and the living quarters of the employees place the employees beyond the reach of reasonable union efforts to communicate with them,'" id. (quoting Babcock & Wilcox, 351 U.S. at 113) (emphasis omitted). Riesbeck argues that any § 7 right to engage in consumer boycott activities is a right of such lesser value than the organizational rights at issue in Lechmere that it can never trump the employer's paramount right to control its private property even if the employer discriminates against union solicitations. In a pre-Lechmere decision, however, the NLRB found the discrimination exception of Babcock & Wilcox applies to the exercise of a § 7 right to engage in consumer boycott activities against non-union employers. See D'Alessandro's, Inc., 292 N.L.R.B. 81, 83-84 (No. 27) (Dec. 29, 1988). The NLRB contends that the emphasis on the "narrow" inaccessibility exception in Lechmere has no effect on discrimination cases. See Jean Country, 291 N.L.R.B. 11, 12 n.3 (No. 4) (Sept. 27, 1988) (multi-factor balancing test in inaccessibility cases, overruled in Lechmere, 502 U.S. at 535-38, involves "distinct analytical view" from discrimination cases).

In view of our holding that Riesbeck did not discriminate in barring the union from its premises, we need not decide whether § 7 rights are involved in the consumer boycott picketing or whether the Babcock & Wilcox discrimination exception to an employer's right to control its property applies to such § 7 rights. Thus, for purposes of our decision, we assume without deciding that the boycott activities were protected by § 7 rights and that the discrimination exception applies. On the facts and circumstances of this case, however, we find no discrimination.

6

Discrimination

Babcock & Wilcox established that "an employer may validly post his property against nonemployee distribution of union literature . . . if the employer's notice or order does not discriminate against the union by allowing other distribution." 351 U.S. at 112. Discrimination claims "inherently require a finding that the employer treated similar conduct differently[.]" NLRB v. Southern Md. Hosp. Ctr., 916 F.2d 932, 937 (4th Cir. 1990) (per curiam).**7** In Southern Maryland Hospital Center, this court recognized "a difference between admitting employee relatives for meals and permitting outside entities to seek money or memberships" which defeated the NLRB's finding of discrimination by the hospital. Id. at 937.

Like Southern Maryland Hospital Center, we find legally significant differences between the charitable solicitation which Riesbeck allowed and the union's "do not patronize" solicitation which Riesbeck prohibited. Riesbeck could reasonably be seen to have allowed the civic and charitable solicitation out of feelings of altruism or civic duty; such motivations, however, would not allow for the union's do-not-patronize distributions.**8**

_____

**7 See, e.g.**, NLRB v. Stowe Spinning, 336 U.S. 226, 228-30 & n.7 (1949) (employer's denial of union organizer's right to use the only meeting hall in a company town because of anti-union bias was properly found to be discrimination); Davis Supermarkets, Inc. v. NLRB, 2 F.3d 1162, 1178 (D.C. Cir. 1993) (allowing outside union members to enter building to communicate with employees but not allowing employees who were members of another union to picket outside building was "egregious" discrimination in violation of the NLRA), cert. denied, 114 S. Ct. 1368 (1994).

**8 Cf. Perry Educ. Ass'n v. Perry Local Educators' Ass'n**, 460 U.S. 37, 48 (1983) ("[E]ven if we assume that by granting access to the Cub Scouts, YMCA's, and parochial schools, the School District has created a `limited' public forum, the constitutional right of access would in any event extend only to other entities of similar character. While the school mail facilities thus might be a forum generally open for use by the Girl Scouts, the local boys' club, and other organizations that engage in activities of interest and educational relevance to students, they would not as a consequence be open to an organization such as PLEA, which is concerned with the terms and conditions of teacher employment.").

The NLRB argues, however, that Riesbeck, under its solicitation policy, allowed consumer-oriented appeals by civic and charitable groups solely for the purpose of enhancing its business, and thus discriminated when the other side of the story--the union's message against Riesbeck's business--was prohibited from being told on Riesbeck's premises. Even if the civic and charitable groups thus became the tools of the employer, however, an employer must have some degree of control over the messages it conveys to its customers on its private property. Cf. Sparks Nugget, Inc. v. NLRB, 968 F.2d 991, 998 (9th Cir. 1992) (finding no discrimination when employer sponsored anti-union speech oriented to customers but forbid nonemployees to distribute pro-union literature). As the Supreme Court stated in the free speech context:

> Implicit in the concept of the nonpublic forum is the right to make distinctions in access on the basis of subject matter and speaker identity. These distinctions may be impermissible in a public forum but are inherent and inescapable in the process of limiting a nonpublic forum to activities compatible with the intended purpose of the property. The touchstone for evaluating these distinctions is whether they are reasonable in light of the purpose which the forum at issue serves.

Perry, 460 U.S. at 49. In this case, Riesbeck has a strong interest in preventing the use of its property for conduct which directly undermines its purposes, i.e., the sale of goods and services to Riesbeck's customers, which was implicated by the union's solicitations but not by the charitable solicitations. Thus, we find Riesbeck reasonably distinguished between charitable solicitations which encouraged its business activity and the union's do-not-patronize message which was not "compatible with the intended purpose of the property." See id.

Furthermore, on the facts of this case, there is no evidence suggesting that Riesbeck was attempting to target union literature for special adverse treatment. First, Riesbeck allowed the union to disseminate information directly to the employees about membership in the union in February 1988. Second, Riesbeck had consistently prohibited other non-charitable solicitation of its customers on the premises, including, for example, prohibiting a political candidate from campaigning at the

8

store. Cf. D'Alessandro's, Inc., 292 N.L.R.B. at 84 (fact that employer allowed noncharitable vendors to sell on the premises as well as two political candidates to make press conferences on the premises, at which candidates criticized union pickets and advocated right to work laws, is evidence of disparate treatment against union pickets). Third, Riesbeck's policy states, without exception, that do-not-patronize messages are not allowed on its premises and Riesbeck has represented to us that it would enforce this policy against other consumer boycotts sponsored by environmental and other groups. There is no evidence of even a single isolated incident in which commercial, political, or other controversial groups were permitted to solicit at Riesbeck's stores. Cf. Be-Lo Stores , 318 N.L.R.B. ____ (No. 1), 151 L.R.R.M. (BNA) 1310, 1320-21, 1995 WL 457281, at *13 (July 31, 1995) (allowing distribution of religious and political litera-ture, and the sales of incense by religious group, but prohibiting union distribution is discriminatory). In sum, we find that neither Riesbeck's policy nor its practices expressly discriminate against the union.[9] Under these circumstances, Riesbeck did not discriminate against union distributions by prohibiting the union's do-not-patronize solici-tations while allowing various other civic and charitable groups to solicit its customers.[10]

_____

[9] The union argues that Riesbeck's solicitation policy, by favoring charitable organizations, facially discriminates against union activities, citing NLRB v. Beverage-Air Co., 402 F.2d 411, 418-19 (4th Cir. 1968). In Beverage-Air, this court invalidated an employer's broad no-solicitation rule which the court found chilled its employees' § 7 rights. Id. at 419. That case, however, did not involve an anti-discrimination principle. Here, Riesbeck's policy does not single out union activity for adverse treatment. Thus, to the extent the policy chills trespassory union activity, it does not do so in a discriminatory manner, which is the rele-vant inquiry under the Babcock & Wilcox discrimination exception.

[10] The NLRB found that Riesbeck independently committed an unfair labor practice by failing to take affirmative actions to dissolve its state court injunctions against the union after the General Counsel filed a com-plaint in this action, thereby preempting the state actions. The NLRB concedes that

> if the Court declines to enforce the Board's threshold unfair labor practice finding, we agree that there would no longer be a predicate for the Board's findings that the Company's mainte-

9

For the foregoing reasons, we grant Riesbeck's petition for review and deny the cross-petitions for enforcement.

PETITION GRANTED AND ENFORCEMENT DENIED

HAMILTON, Circuit Judge, concurring in the judgment:

While I do not take issue with the majority's analysis regarding the discrimination issue, I find it unnecessary to reach that issue because I believe that the "mutual aid or protection" clause of § 7 of the NLRA does not protect the union's picketing of Riesbeck and its handbilling of Riesbeck's customers.

Riesbeck is appealing the NLRB's findings that it committed unfair labor practices when Riesbeck (1) refused to allow the union access to its property and (2) instituted state trespass actions against the union. Before the NLRB can find that Riesbeck committed unfair labor practices, the union's activity must be protected by § 7. See 29 U.S.C. § 158(a)(1).* Section 7 of the NLRA states, "Employees shall have the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection. . . ." 29

_____

nance of the state court trespass actions constituted an unfair labor practice. . . . Accordingly, in that eventuality, the Court should deny enforcement of this second unfair labor practice as well.

NLRB Br. at 18 n.6. See Loehmann's Plaza II, 316 N.L.R.B. at 114 ("Absent a finding that the picketing and handbilling on private property is protected, a lawsuit to enjoin that activity is not unlawful."). In light of the NLRB's concession, and given our finding that prohibiting the union's consumer boycott activities on Riesbeck's premises did not constitute an unfair labor practice on Riesbeck's part, we also deny enforcement of the NLRB's order finding Riesbeck committed an unfair labor practice by failing to dissolve its state court injunctions against the union.
*The pertinent part of this statute states, "It shall be an unfair labor practice for an employer . . . to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in section 157 of this title[.]"

10

U.S.C. § 157 (emphasis added). In the instant case, the Board and the union, as intervenor, both contend that the union's activity falls under the "mutual aid or protection" clause of § 7, and accordingly, they conclude that the NLRB did not err in finding that the union's activity was protected by § 7.

"The `mutual aid or protection' clause of Section 7 protects employees who `seek to improve terms and conditions of employment or otherwise improve their lot as employees through channels outside the immediate employee-employer relationship.'" New River Indus., Inc. v. NLRB, 945 F.2d 1290, 1294 (4th Cir. 1991) (quoting Eastex, Inc. v. NLRB, 437 U.S. 556, 565 (1978)); see also Office & Professional Employees Int'l Union v. NLRB, 981 F.2d 76, 82 (2d Cir. 1992) (stating that the NLRA "revolves around the protection of workers' efforts to better their working conditions through collective action"). Terms and conditions of employment that employees may seek to improve include "wages, benefits, working hours, the physical environment, dress codes, assignments, responsibilities, and the like." New River Indus., 945 F.2d at 1294. But the "mutual aid or protection" clause does not protect employees who engage in concerted activity for purposes that do not relate to the improvement of the terms and conditions of their employment. See NLRB v. Washington Aluminum Co., 370 U.S. 9, 17 (1962) ("It is of course true that § 7 does not protect all concerted activities."); Office & Professional Employees Int'l Union, 981 F.2d at 82 ("[T]he Act does not protect any `union activity' engaged in by an employee if it is unrelated to the terms and conditions of employment."); New River Indus., 945 F.2d at 1294-95 (finding that "a mocking letter about free ice cream supplied in appreciation for a new contract with a supplier" which did not relate to the employees' working conditions was not protected by the "mutual aid or protection" clause).

The fundamental flaw in the NLRB's and the union's contention that the union's activity was protected by the "mutual aid and protection" clause is that neither party has demonstrated, nor even asserted, how the union's activity would improve the terms and conditions of employment for the union employees of the grocery stores competing with Riesbeck. Especially significant is the absence of any claim that Riesbeck's nonunion status damaged or would damage the terms and conditions of employment for the employees of the grocery stores

11

competing with Riesbeck, e.g., Riesbeck paying its employees less than the prevailing area standards. Although the NLRB has previously found union activity similar to the union's activity here as being protected by the "mutual aid or protection" clause of § 7, see D'Alessandro's, Inc., 292 N.L.R.B. 81, 83 (1988); Jean Country, 291 N.L.R.B. 11, 17 (1988), overruled in part on other grounds, Lechmere, Inc. v. NLRB, 112 S. Ct. 841, 847-48 (1992), the NLRB's decisions in those cases suffer from the identical flaw that the NLRB's decision here suffers from: the failure to explain how "do-not-patronize" messages will improve the terms and conditions of the employees of union stores.

In NLRB v. Great Scot, Inc., 39 F.3d 678 (6th Cir. 1994), the Sixth Circuit dealt with a somewhat similar issue. In that case, the union activity at issue was area standards picketing and handbilling, id. at 679, which the NLRB contends is analogous to the union's activity here. Brief for NLRB at 14 n.4. In Great Scot , the union's agents carried picket signs that stated the following: "`Notice to the Public--Don't Shop [at Great Scot]. The store pays its employees wages and fringe benefits which are far below those paid to Unionized Grocery Store Employees in the area. This Company is attempting to destroy our higher Union Standards.'" Great Scot, 39 F.3d at 680 (alteration added by court). In response to the union's activity, Great Scot requested that the union agents stop distributing handbills on its property, contacted the police to aid in their removal, and filed a trespass action in state court seeking injunctive relief against the union. Id. The NLRB found that Great Scot's responses constituted unfair labor practices. Id. at 682.

On appeal, Great Scot argued that the union's activity was not protected by § 7 because the union did not show that the wages and benefits Great Scot gave its employees were below the area standards. The Sixth Circuit agreed, and it denied enforcement of the NLRB's order. The court stated: "Because it is `the duty of a union that seeks to engage in lawful area standards picketing' to investigate wages and conditions alleged to be substandard, the union has the burden of `coming forward with credible evidence' that establishes both the area standards and the claimed disparity." Id. at 684 (citations omitted) (emphasis added by court). Because "the union wholly failed to offer proof sufficient to permit the administrative law judge to determine

12

that Great Scot was properly subject to area-standards picketing," the court found that the union's activity was unprotected by § 7. <u>Id.</u>

Like the union in <u>Great Scot</u>, the union here "wholly failed" to offer any evidence showing how the union's "do-not-patronize" message would improve the terms and conditions of employment for the employees of the unionized grocery stores that competed with Riesbeck. Absent such evidence, the "mutual aid or protection" clause could not protect the union's activity here. Accordingly, I would grant Riesbeck's petition for review and deny enforcement of the NLRB's order on this sole ground.

13