*449 EDITH H. JONES, Chief Judge,
dissenting:
With due respect to the meticulous opinion for the majority, I cannot agree with the NLRB’s imposition of liability on Oak-tree Capital Management, L.P., an investment adviser, for labor law violations committed by Turtle Bay Resorts (TBR) and Benchmark Hospitality, the resort lessor/operators. NLRB cites no, authority that applies the “single employer” theory to an investment adviser/manager. See Oaktree Capital Management, L.L.C., 353 NLRB No. 127 (2009) (adopted by the Board by reference in Oaktree Capital Management, L.L.C., 355 NLRB No. 147, at *1). Although the Board’s use of the single employer theory has been sanctioned by the Supreme Court in two narrow instances, more recent pronouncements demonstrate the Court’s fidelity to enforcing corporate separateness, a doctrine on which much of our current economy depends to safeguard risk-taking and investment. The Board’s use of single employer theory in this case is gratuitous and unnecessary inasmuch as TBR and Benchmark together are indisputably joint employers whose ability and motivation to comply with the Board’s order are not in doubt.[1]
The Board’s single employer theory evolved from a rule regulating the jurisdictional limit of the NLRB, Radio & Television Broad. Technicians Local Union 1264 v. Broad. Serv. of Mobile, Inc., 380 U.S. 255, 85 S.Ct. 876, 13 L.Ed.2d 789 (1965), to one concerned with various manipulations of traditional intracorporate relationships that, deliberately or not, evaded federal labor law. S. Prairie Constr. Co. v. Local No. 627, Int’l Union of Operating Eng’rs, 425 U.S. 800, 96 S.Ct. 1842, 48 L.Ed.2d 382 (1976). The Board’s four part test to assess single employer liability[2] is thus understandably a somewhat lower bar than the common law doctrine necessary to pierce the corporate veil. See, e.g., Dole Food Co. v. Patrickson, 538 U.S. 468, 475, 123 S.Ct. 1655, 155 L.Ed.2d 643 (2003) (noting that “[t]he doctrine of piercing the corporate veil ... is the rare exception, applied in the case of fraud or certain other exceptional circumstances”); Vance v. NLRB, 71 F.3d 486, 490-91 (4th Cir.1995) (noting that piercing the corporate veil generally requires unlawful motive or intent while finding single employer status requires no such finding).
Taken too generally, however, the elements of the NLRB test would impose responsibility on virtually any corporate parent for subsidiary or affiliate actions, *450 because the subsidiary is ultimately accountable to its parent company and because they often share common employees or officers. But a unanimous Supreme Court has recognized that “it cannot be enough to establish liability here that dual officers and directors made policy decisions and supervised activities at the facility.” United States v. Bestfoods, 524 U.S. 51, 69-70, 118 S.Ct. 1876, 141 L.Ed.2d 43 (1998). Indeed, the Court relied on this court’s decision in Lusk v. Foxmeyer Health Corporation, 129 F.3d 773, 779 (5th Cir.1997), observing the “well established principles” that not only do such officers frequently “change hats” in representing a parent or subsidiary, but courts “generally presume ‘that they are wearing the “subsidiary’s hat” ... when acting for the subsidiary.’ ” Bestfoods, 524 U.S. at 69, 118 S.Ct. 1876. Even more recently, the Court refused to affix liability on an investment adviser under federal securities law for misleading statements made by a fund administered by the advisor. Janus Capital Grp., Inc. v. First Derivative Traders, - U.S. -, 131 S.Ct. 2296, 2305, 180 L.Ed.2d 166 (2011). The majority declined “to disregard the corporate form” because the entities maintained legal separateness and followed corporate formalities, id. at 2304, even though all of the officers of the fund were also employees of the advisor, id. at 2306 (Breyer, J., dissenting).
The Board’s reliance on the single employer theory to conflate “Oaktree” and TBR bears no relation to the corporate structure of the entities and even less to labor law policy. On the latter score, it is clear that TBR, rather than being a mere “shell”, as alleged by the Board in Oaktree Capital Management, L.L.C., 353 NLRB No. 127, at *11 (2009), was the financial center for the resort,[3] while Benchmark had a contract for day to day management. Only on-site employees took the actions that became the subject of the Board’s findings of unfair practices. Together, as an admitted joint employer, TBR and Benchmark were fully accountable, solvent and responsible parties for the Board’s purposes. No obvious labor law policy is being served by holding Oaktree liable in addition.
How the Board applied the single employer theory, however, is as unfortunate as its lack of policy grounding. First, Oaktree did not “own” TBR or even stand within the corporate chain that leads back to the investment funds for which Oaktree LP is the general partner. This chart portrays the complex, albeit hardly extraordinary, corporate structure.
*451 [[Image here]]
Oaktree, despite being an investment adviser and asset manager to the funds and involved in managing TBR, holds no direct ownership of the resort as evidenced by the chart above. NLRB simply erred, as the majority opinion almost admits. Thus, to conclude that TBR was a “conduit”, id. at *12, for Oaktree has no legal significance. There is no evidence disputing TBR’s financial independence as the resort’s lessor or that corporate formalities within the members of the ownership chain were ignored.
Second, the NLRB’s finding of “common management” between Oaktree and TBR proves nothing more than is allowed by “general principles” of corporate law, as emphasized by the Supreme Court. The majority opinion elaborates on this element of NLRB’s test by stating, inter alia, that Russell Bernard, President of TBR, was also a principal in Oaktree and “portfolio manager” for the investment funds; and the majority concludes that Bernard was “acting on Oaktree’s behalf in controlling the Resort’s labor relations.” This conclusion is unsupported by evidence showing why or how “Oaktree” directly benefited from controlling the resort’s labor relations. In other single employer cases, the “common management” criterion demonstrates that a corporate parent, or sibling, will benefit by the closing down of one (unionized) operation; shifting operations from a union to non-union subsidiary; or otherwise reorganizing the company to the detriment of a union contract. See., e.g., NLRB v. O’Neill, 965 F.2d 1522, 1525-26, 1530 (9th Cir.1992) (finding that an owner shut down his union factory only to use other entities he owned to reopen the factory without union workers). Not so here. In fact, nothing distinguishes the *452 NLRB’s finding against “Oaktree” from a finding it could equally have made against the Funds themselves: Oaktree, after all, is general partner of two of the funds and adviser to the third! NLRB has inverted the Supreme Court’s proposition in Best-foods that corporate officers or managers may indeed wear two hats, and are presumed to wear the proper hat, in attending to their dual duties.
Third, the most important element of the test is centralized control of labor relations. Naperville Ready Mix, Inc. v. NLRB, 242 F.3d 744, 752 (7th Cir.2001); O’Neill, 965 F.2d at 1529. The majority rely on just two pieces of correspondence, one in which Bernard reported to the Funds on the status of labor negotiations (in response to a letter sent by the Union to the Fund investors), and one sent by the Union to Bernard on a similar subject. Yet Bernard was authorized to wear separate hats in reporting as the funds’ investment adviser, on one hand, and dealing through TBR, on the other. Moreover, in the absence of some scheme to deceive the Union as to the identity of the “employer,” how the Union addresses Bernard should not be probative against Oaktree. The “control” exhibited for purposes of these violations, however, had nothing to do with Bernard’s correspondence. All violations were committed by employees on the premises at Turtle Bay (e.g., the resort’s director of human resources, the security chief, Benchmark’s general manager, resort restaurant managers). Oaktree Capital Management, L.L.C., 353 NLRB No. 127, at *53-86. None of the violations were committed by or at the behest of Bernard and other “Oaktree” personnel headquartered in New York. That there is no evidence linking “Oaktree” to the retaliatory acts of on-site management personnel for the union’s extremely disruptive conduct speaks loudly to the lack of “centralized” labor relations between Oaktree and TBR.
And this lack of evidence stands in stark contrast to the traditional cases in which NLRB has applied the single employer test. In prior cases, the uniform theme is that one integrated company in an integrated business is managing overall labor relations among the related entities in order to disadvantage a union and directly benefit its bottom line. See, e.g., Covanta Energy Corp., 356 NLRB No. 98 at *34, 38 (2011) (finding that the subsidiary was an integrated part of the corporate parent and that this integrated employer discontinued paying corporate bonuses to workers to discourage union activity). Here, there is no “centralization” of the enterprise. Oaktree’s business is the management of some $80 billion in forty investment funds for clients like universities, charitable trusts, and public and private pension funds. Global Presence, Oaktree, htt p://www.oaktreecapital.eom/about/ global-presence.aspx (last visited Sept. 12, 2011). The Resort’s business, managed by TBR/Benchmark, is unrelated functionally to that of Oaktree. There is no “there” behind the conclusion that management of the Resort’s labor relations was centrally controlled by Oaktree.
The final element of NLRB’s test, as related by the majority, is operational integration. The majority supports the NLRB’s conclusion with reference, again, to the overlap between Oaktree representatives and TBR’s management. Even if this is so, and even if Oaktree “operated” TBR, and TBR, along with Benchmark, ran the Resort, this is not the type of “operational integration” contemplated in the NLRB’s prior cases. Oaktree created or used TBR as a self-sufficient corporate vehicle for an individual investment opportunity. It had no integrated relationship with other resort properties that could be *453 affected by Turtle Bay’s unions or could disadvantage those unions. Yet it is the overall consequence for the integrated operation to which NLRB has looked in the past and that alone justifies ignoring the integrity of corporate relations.
I reiterate one major point. There is no dispute that together, TBR and Benchmark Hospitality are solvent, responsible and liable parties. Fixing additional liability on an unrelated corporate entity, Oak-tree, was wholly superfluous. The cost of discarding the corporate form is not justified when no labor law policy is advanced. For all these reasons, the shell of the NLRB’s test appears to be intact, but the substance of the test — and its connection with the purposes of federal labor policy— are absent. I respectfully dissent from the enforcement of the Board’s order against Oaktree.

. In response to the majority’s focus on the substantial evidence standard of review, Majority at 438-39, I note that as applied to this case, the single employer theory itself is unjustifiable. The NLRB’s interpretation of the NLRA, its governing statute, is ordinarily due Chevron deference. Lechmere, Inc. v. NLRB, 502 U.S. 527, 536-37, 112 S.Ct. 841, 117 L.Ed.2d 79 (1992). Courts give no deference to the NLRB, however, if its interpretation ”rest[s] on erroneous legal foundations,” Id. at 539 (quoting NLRB v. Babcock & Wilcox Co., 351 U.S. 105, 112, 76 S.Ct. 679, 100 L.Ed. 975 (1956)), or the NLRB’s position is an unreasonable interpretation of the Act. First Healthcare Corp. v. NLRB, 344 F.3d 523, 546 (6th Cir.2003). Given the recent Supreme Court precedent on the corporate form, the NLRB’s extension of the "single employer” doctrine is on shaky legal ground. The NLRB’s unprecedented attempt to disregard the complex corporate structure in the instant case is unreasonable especially given the facts in this case where a culpable and solvent subsidiary is not denying liability.

. The four part test to determine "single employer” status includes the following considerations: "interrelation of operations, common management, centralized control of labor relations and common ownership.” Radio & Television Broad. Technicians, 380 U.S. at 256, 85 S.Ct. 876.

. All revenues from the operation of Turtle Bay Resort are deposited into an account controlled by TBR and TBR is liable for all operating expenses. Oaktree Capital Management, L.L.C., 353 NLRB No. 127, at *11.