MANION, Circuit Judge,
concurring in the judgment.
We must enforce the Board’s order and deny Caterpillar’s petition for review be *367 cause both the Board and the ALJ properly balanced the parties’ rights under Holyoke Water Power Co., 273 N.L.R.B. 1369 (1985). The ALJ found that the union’s right to responsible representation on the issues of health and safety required an onsite inspection and that the materials Caterpillar provided to the union were a poor substitute. Thus, the ALJ found that the union’s right to access outweighed Caterpillar’s property rights. Caterpillar Inc., 359 N.L.R.B. No. 97 (Apr. 23, 2013). The Board affirmed these findings. 361 N.L.R.B. No. 77 (Oct. 30, 2014). The Board’s decision was supported by substantial evidence and its legal conclusions have a reasonable basis in law. See Sears, Roebuck & Co. v. NLRB, 349 F.3d 493, 502 (7th Cir.2003).
The balance weighed is between the parties’ respective rights, not the harms or burdens. Ante at 364; cf. ante at 365-66. To determine whose right prevails, the Board balances the company’s property rights, which include the right to exclude others, against the union’s right to responsible representation, which requires information on health and safety conditions. In so doing, the Board must consider whether the union’s needs can be met by alternate means other than entering the employer’s premises. Holyoke Water Power, 273 N.L.R.B. at 1370.
The Supreme Court has recognized that “[organization rights are granted to workers by the same authority, the National Government, that preserves property rights,” and that employers have the “right to exclude from property.” N.L.R.B. v. Babcock & Wilcox Co., 351 U.S. 105, 112, 76 S.Ct. 679, 100 L.Ed. 975 (1956). Caterpillar’s lack of an “actual harm” from Thompson’s inspection does not render its side of the scale empty. Caterpillar still retains the right to exclude others from its property. The lack of harm, however, shows in this case that Caterpillar’s property rights can be sufficiently accommodated even if it is forced to allow union access.
That said, even union access that results in “no actual harm” still infringes on an employer’s property rights, requiring the Board to determine whether the union has an actual need for access. This was the point of Caterpillar’s reference to a leaky faucet. Caterpillar did not analogize the accident investigation sought by the union to an investigation of a leaky faucet to trivialize the unfortunate man’s death. See ante at 361. Rather, Caterpillar stressed that access must be granted only where alternative means are insufficient:
The severity — indeed, the tragedy — of the accident is not in dispute. But, the touchstone of the Holyoke standard is not the relative severity of the accident that precipitated the Union’s demand for access, it is the necessity of access as the only means of carrying out the union’s representational function. Again, that the Union may seek access for a legitimate representational purpose is only the threshold question in the analysis. Holyoke, 273 NLRB at 1370. The critical inquiry is whether access is required in order for the union to undertake its investigation. Id. If not, the employer’s competing property interests prevail, whether the underlying issue that the union seeks to investigate [is] an industrial accident or a leaky faucet.
Appellant Br. 31. While “a leaky faucet” is perhaps not the best comparison, the Board used the same comparison during oral argument to explain why the relevance of the information sought from an investigation must be established before Holyoke’s balancing test is applied. The Board did so to explain why the ALJ discussed information cases when the union sought access.
*368 The ALJ found, by substantial evidence, that the alternative means to investigate were insufficient, so the union required access. It is the union’s need for access, rooted in the employees’ right to responsible representation, that weighs heavier on the scale than Caterpillar’s property rights. Whatever benefit the union derives from demonstrating to its members that it is not impotent is not weighed in the balance.[1] See ante at 364. The right to responsible representation does not include the right to flex union muscle.

. Although we cannot exclude the possibility that Caterpillar refused access to Thompson to prevent the union from “perhaps discovering negligence" or "to demonstrate to its employees that the union can do nothing to enhance their safety,” ante at 364, there is no evidence in the record to suggest that it was so.